# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MCCLINCY BROTHERS FLOOR COVERING, INC., a Washington corporation d/b/a McClincy's,

Appellant,

v.

COLLIN CARPENTER and TRISH CARPENTER, husband and wife, the Carpenter marital community; and RANDALL V. BROOKS,

Respondents.

_____

COLLIN CARPENTER and TRISH CARPENTER, husband and wife, the Carpenter marital community,

Respondents,

v.

TIMOTHY MCCLINCY, a single man, and CROWN MOVING CO., INC., a Washington corporation,

Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 73066-5-I (consolidated with No. 73861-5-I)

DIVISION ONE

UNPUBLISHED OPINION

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 APR -3 AM 8: 45
FILED

FILED: April 3, 2017

TRICKEY, A.C.J. — McClincy Brothers Floor Covering, Inc. (McClincy's) sued its former clients, Trish and Collin Carpenter, and its former employee, Randy Brooks, alleging that they had breached their contracts with McClincy's, were unjustly enriched, and conspired to defraud McClincy's.

The Carpenters counter-sued, alleging breach of contract, conversion, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. The Carpenters prevailed on all claims. The trial court awarded the Carpenters

damages, prejudgment interest, and attorney fees.

On appeal, McClincy's raises numerous challenges to the judgment against it, including that the trial court should not have awarded prejudgment interest for the conversion claim. Because those damages were an estimate, we agree. But we reject the rest of its arguments.

Brooks also counter-sued, contending, among other claims, that McClincy's had failed to pay him overtime. Brooks prevailed. McClincy's challenges the trial court's grant of partial summary judgment to Brooks, its method for calculating overtime pay, and its award of attorney fees. We find no error.

Accordingly, we affirm the trial court in all respects, except for the award of prejudgment interest for the Carpenters' conversion damages.

## FACTS[1]

In May 2011, the Carpenters discovered a water leak in their home. The damage was extensive, requiring repairs to the entry, hallway, powder bathroom, full bathroom, kitchen, and recreation room. The Carpenters reported the leak and damage to their homeowner's insurer, Encompass Insurance Company (Encompass).

The Carpenters hired McClincy's to repair the water leak and damage caused by it. The Carpenters and McClincy's signed a contract on May 4, 2011. The contract provided that McClincy's would complete the repair work in two

---

[1] A majority of the facts rely on the trial court's unchallenged findings of facts. Unchallenged findings of fact are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). McClincy's assigns error to several of the trial court's findings but, with a few exceptions, did not support those assignments with argument. Those assignments are waived. Cowiche, 118 Wn.2d at 809.

phases. In phase one, McClincy's would dry out the damaged areas. In phase two, McClincy's would reconstruct the damaged areas. The Carpenters agreed that McClincy's would bill Encompass directly, but that they would be responsible for paying McClincy's if Encompass did not.

A separate contract detailing the scope of work required in phase two estimated that it would cost $169,333.15. It required an initial deposit of $110,066.55, an additional $42,333.29 once McClincy's began installing the cabinets, and $16,933.31 "upon substantial completion of the job."[2]

The original contract also provided that the Carpenters would pay reasonable attorney fees incurred by McClincy's in any collection action. It allowed McClincy's to recover liquidated damages in the event that the Carpenters breached the main contract, and also allowed McClincy's to put a mechanic's lien against the Carpenters' real property "in the event of default."[3]

McClincy's completed phase one with no problems. McClincy's assigned Brooks to be the project manager overseeing phase two. Through Brooks, McClincy's negotiated directly with Encompass on the Carpenters' behalf. Brooks described McClincy's as the Carpenters' "'advocate'" with Encompass.[4]

Following a recommendation by Brooks, the Carpenters moved the majority of their household furnishings into storage at Crown Moving and Storage Company. In July 2011, the Carpenters moved to an apartment with rented furniture for phase two, because their house would not have a working kitchen and

---

[2] Def.'s Ex. 102.
[3] Def.'s 101 at 2 (capitalization omitted).
[4] Clerk's Papers (CP) at 2251.

it was inconvenient to have them in the house during repairs.

During phase two, the project began experiencing delays. McClincy's had to reorder the cabinets from the manufacturer several times. There were issues with the tiles ordered for the downstairs bathroom and kitchen backsplash. McClincy's determined that it needed to do additional electrical work before it could install the cabinets. Encompass agreed to pay for the additional work associated with the water damage repairs.

Around the same time, the Carpenters separately negotiated with McClincy's to remodel part of their home's interior, completely unrelated to the water damage. The Carpenters also explored hiring McClincy's to construct an outdoor, covered patio. Brooks submitted a bid for the patio on behalf of McClincy's. The Carpenters rejected it as too expensive. They proceeded with the work on the patio, acting as their own general contractor and hiring subcontractors to help.

In August 2012, McClincy's met with the Carpenters to settle accounts for the non-water damage interior work McClincy's had completed. Soon after, McClincy's and the Carpenters disagreed over whether the Carpenters needed to pay McClincy's for work it had not yet completed. Specifically, they disputed whether the Carpenters needed to endorse a check they were going to receive from Encompass. McClincy's refused to finish the remaining work until the Carpenters paid it.

Concerned that he would lose leverage if he paid McClincy's before it completed the work, Collin Carpenter contacted Encompass and asked it to stop

payment on the check. Around the same time, McClincy's falsely reported to Encompass that it had fired Brooks because "Brooks and the Carpenters were defrauding Encompass."[5] In fact, McClincy's did not fire Brooks; he resigned. Encompass stopped all payments for the water damage repairs.

In September 2012, McClincy's secretly removed the Carpenters' furnishings from storage. McClincy's sent the Carpenters a notice of default in October, but did not tell them that it had removed the furnishings.

After receiving the notice of default, the Carpenters hired a construction consultant. He recommended that the Carpenters hire a different construction company to finish the water damage repairs. The Carpenters retained that company, which finished the repairs.

In January 2013, the Carpenters first learned that McClincy's had removed their furnishings from storage. McClincy's refused to release the furniture or disclose its location to them.

McClincy's sued the Carpenters for breach of contract, unjust enrichment, aiding and abetting breach of fiduciary duty, and conspiracy to defraud. The Carpenters filed counterclaims against McClincy's and Tim McClincy,[6] the owner of McClincy's, individually, including breach of contract, conversion, and trespass to personal property. Later, the Carpenters amended their complaint to include claims for violations of the CPA.

In February 2013, the trial court issued a preliminary injunction, restraining

---

[5] CP at 2255.
[6] To avoid confusion, we refer to Tim McClincy as Tim when describing action he took as an individual.

McClincy's from disposing of the Carpenters' furnishings in any way and ordering it to permit inspection of the furnishings. McClincy's eventually allowed the inspection in May 2013. In November 2013, McClincy's admitted that it had moved the furnishings again after the inspection. McClincy's finally returned the Carpenters' property on December 18, 2013.

In March 2014, McClincy's amended its complaint to add claims against Brooks. Brooks had worked for McClincy's from February 2008 until he resigned in August 2012. He asserted several wage-related counterclaims against McClincy's, including that McClincy's had withheld his overtime pay.

In June 2014, the court granted the Carpenters' partial summary judgment motions on McClincy's fraudulent concealment, aiding and abetting, and civil conspiracy claims. It also granted the Carpenters' motion for summary judgment on one of McClincy's unjust enrichment claims. It granted Brooks' claim for summary judgment on McClincy's breach of contract claim.

The case proceeded to a bench trial. At the Carpenters' request, the trial court dismissed McClincy's other unjust enrichment claim after McClincy's rested. It also dismissed McClincy's breach of contract claims against the Carpenters.

The trial court found that McClincy's had breached its contract with the Carpenters, converted the Carpenters' property, trespassed on their property, and violated the CPA. The trial court awarded judgment against McClincy's and Tim McClincy, individually, and jointly and severally. It awarded the Carpenters treble damages for the CPA violations and prejudgment interest on their other claims. It also found that McClincy's had failed to compensate Brooks for working overtime.

The trial court awarded attorney fees to both Brooks and the Carpenters. McClincy's appeals.[7]

## ANALYSIS

### Summary Judgment – Unjust Enrichment

McClincy's argues that the trial court erred by granting the Carpenters' motion for summary judgment on its unjust enrichment claim related to work done on the patio because McClincy's did not add that claim until after the Carpenters filed their motion for summary judgment. Because the Carpenters' motion made it clear that they were seeking summary judgment on all claims related to the work on the patio, we disagree.

Summary judgment is appropriate if there are no material issues of fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "[T]he moving party bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The moving party's motion must "clearly state" which issues it believes "are susceptible to resolution by summary judgment." White v. Kent Med. Ctr., Inc., P.S., 61 Wn. App. 163, 169, 810 P.2d 4 (1991).

If the moving party meets its initial burden, the burden shifts to the party that will bear the burden of proof at trial. Young, 112 Wn.2d at 225. If the responding party fails to meet its burden to "'establish the existence of an element essential to

---

[7] Tim did not appeal in his individual capacity. He moved to join McClincy's appeal. The Carpenters and Brooks initially opposed the joinder, but withdrew that objection at oral argument. At oral argument, Brooks and the Carpenters withdrew their opposition to Tim's motion. Wash. Court of Appeals oral argument, McClincy Bros. Floor Covering v. Carpenters, No. 73066-5-I (Sept. 26, 2016), at 33 min., 34 sec. to 33 min., 45 sec. We grant the motion under RAP 5.3(i).

that party's case,' . . . the trial court should grant the motion." Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party cannot raise new issues in its rebuttal materials because the nonmoving party would have no opportunity to respond. White, 61 Wn. App. at 168.

In Admasu v. Port of Seattle, the defendant moved for summary judgment on all of the plaintiffs' claims, but addressed only those related to noise damage. 185 Wn. App. 23, 40, 340 P.3d 873 (2014). It "did not even make a passing mention" of the plaintiffs' other claims. Admasu, 185 Wn. App. at 40. The trial court granted the motion, dismissing all of the plaintiffs' claims. Admasu, 185 Wn. App. at 29, 41. The Court of Appeals reversed, holding that the defendant's motion did not put the plaintiffs "on notice that they needed to address" the merits of their other claims. Admasu, 185 Wn. App. at 41.

Here, the Carpenters moved for partial summary judgment on McClincy's claims "for damages arising out of the alleged unwritten, unsigned agreement with the Carpenters."[8] In its amended complaint, McClincy's asserted claims for breach of contract, aiding and abetting breach of fiduciary duty, conspiracy to defraud, and unjust enrichment. The Carpenters had already moved successfully on the fiduciary duty and fraud claims. In this partial summary judgment motion, the Carpenters explained that McClincy's had been unwilling to identify the exact basis of those claims, and had referred them back to the factual allegations in the complaint.

---

[8] CP at 1299.

At the time the Carpenters filed their motion, they understood McClincy's to be asserting a "new claim for breach of an 'unwritten, unsigned agreement' . . . apparently based on a written estimate prepared for McClincy's by Randy Brooks for exterior work that McClincy's was bidding for that was *rejected* by the Carpenters."[9] The Carpenters explained that McClincy's was now claiming it was entitled to the profit it should have received from building the addition.

McClincy's did not file any response to the motion. Instead, it moved to amend its complaint again to add more facts to its allegations and a new cause of action for unjust enrichment, both related to the work on the Carpenters' patio. As the factual basis for this cause of action, McClincy's asserted that "Carpenter and Brooks entered into an agreement for the construction of the extra addition," and that McClincy's was entitled to lost profits from the project. The trial court granted the Carpenters' motion and dismissed the claim for unjust enrichment, as stated in McClincy's second amended complaint.[10]

Both the Carpenters' motion for summary judgment and McClincy's new cause of action arose from the alleged agreement that McClincy's would work on the Carpenters' addition. McClincy's claimed damages, in both the deposition and the second amended complaint, were its lost profits. Although the Carpenters' motion described it as a breach of contract claim and McClincy's later described it as an unjust enrichment claim, the Carpenters put McClincy's on notice that they were seeking summary judgment on this claim. And, the Carpenters satisfied their

---

[9] Their basis for this understanding was McClincy's CR 30(b)(6) deposition testimony, in which Tim alleged this agreement existed.

[10] The court granted, in part, McClincy's motion to amend the complaint before it granted the Carpenters' motion for partial summary judgment.

initial burden of showing that there was no evidence to support the claim, as they understood it.[11] The burden then shifted to McClincy's to show that there were issues of material fact precluding summary judgment.

McClincy's did not carry this burden. It did not file anything to address the merits of the Carpenters' motion. Amending a complaint to add a claim that is already the subject of a motion for summary judgment is not a sufficient response. Therefore, McClincy's did not meet its burden to show that there was evidence to support its claims related to the unwritten agreement to work on the Carpenters' patio. The trial court did not err in granting summary judgment on the claim as stated in the second amended complaint.

McClincy's argues that the trial court should not have granted the Carpenters' motion because the claim "did not even exist at the time" that the Carpenters' filed their motion for summary judgment.[12] But the claim, though not articulated clearly, did exist. McClincy's included facts related to this claim in its amended complaint; the first and second causes of action in that version of the complaint incorporated those facts.

### CR 41(b)(3) – Unjust Enrichment

McClincy's argues that the trial court erred by dismissing its claim for unjust enrichment for the interior remodeling work it completed that was unrelated to the water damage. Specifically, McClincy's argues that the court erred in determining that the Carpenters had established the affirmative defense of accord and

---

[11] The Carpenters' motion showed that McClincy's had no evidence that the Carpenters and Brooks had ever formed an agreement.
[12] Br. of Appellant at 26.

satisfaction as a matter of law. We disagree with McClincy's. The trial court weighed the evidence and found that McClincy's claim failed as a matter of fact. Substantial evidence supports the trial court's findings.

When the trial court is hearing a case as the trier of fact, the defendant may move for the trial court to dismiss the plaintiff's claim after the plaintiff rests, on "the ground that upon the facts and the law the plaintiff has shown no right to relief." CR 41(b)(3). The trial court may dismiss the claim as a matter of law or it may "weigh the evidence and make a factual determination that the plaintiff has failed to come forth with credible evidence of a prima facie case." In re Dependency of Schermer, 161 Wn.2d 927, 939, 169 P.3d 452 (2007). If the trial court weighs the evidence, it must make findings to support its decision. CR 41(b)(3). There is a strong suggestion that the trial court has weighed evidence when it enters findings of facts and conclusions of law. Schermer, 161 Wn.2d at 940. In those cases, the appellate court reviews the findings for substantial evidence. Schermer, 161 Wn.2d at 940.

Here, the Carpenters moved for dismissal of McClincy's claim for unjust enrichment related to the remodeling of their house's interior. The court granted their motion. In its oral ruling, the trial court stated that the Carpenters had established accord and satisfaction as a matter of law. But it also said, "If the Court were to weigh the evidence in this case, the Court would find for the Carpenters."[13] It entered written findings of fact related to the unjust enrichment claim. And, in the court's second amended conclusions of law, it held that McClincy's unjust

---

[13] Report of Proceedings (RP) (July 24, 2014) at 64.

11

enrichment claim "failed upon its facts and as a matter of law. . . . [N]o evidence was presented that the Carpenters concealed anything or that McClincy's had otherwise proved a recovery on an unjust enrichment theory."[14] Therefore, the trial court, at least on an alternate basis, dismissed McClincy's unjust enrichment claim on the facts. We review the trial court's findings for substantial evidence.

The elements of accord and satisfaction are that "the debtor (1) tenders payment (2) on a disputed claim, (3) communicating that the payment is intended as full satisfaction of the disputed claim, and (4) the creditor accepts the payment." Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 297, 38 P.3d 1024 (2002).

Here, the trial court concluded that McClincy's unjust enrichment claim failed because the Carpenters had proved an accord and satisfaction. Its findings of fact support that conclusion.[15] Substantial evidence supports those findings.

Brooks sent the Carpenters an e-mail on August 1, 2012, about a meeting that he, Tim, and the Carpenters would have at the Carpenters' house:

> I just wanted to confirm our meeting tomorrow at 10:00 am at your house and provide you with a statement of account along with the detail of corresponding supplemental work. We have received the last check from the mortgage company and will need your endorsement. I've attached the additional supplements. McClincy's would like to receive payment on the balance of work tomorrow when we meet so that we can continue production at your house.[16]

Attached to the e-mail were two contract supplements related to water damage repairs and one related to the additional work completed at the Carpenters house.

---

[14] CP at 2374.

[15] Because McClincy's did not challenge the trial court's finding of fact 1.30 it is a verity on appeal. McClincy's did challenge findings of fact 1.31 and 1.32, but substantial evidence supports those findings.

[16] Pl.'s Ex. 18 at 1.

Brooks testified that Tim dictated the content of the e-mail. The purpose of the meeting was "to summarize all of the work that had been agreed to with Mr. Carpenter to be performed, and that—that had already been performed."[17] Collin Carpenter testified that Brooks had told him before the meeting that "McClincy's expected to be paid for all of the work that was being done to the interior" of his house.[18] The supplement for the interior work originally included a 5 percent contingency payment. But, when Collin and Tim signed it on August 2, 2012, they removed the contingency payment and reduced the total payment to $49,951.95. Tim testified that he accepted the $49,000 payment and used it to pay one of his subcontractors.

McClincy's argues that the Carpenters could not have meant the August 2, 2012 payment to be an accord and satisfaction because the check did not state it was payment in full and because the Carpenters continued to negotiate with McClincy's after August 2, 2012. Neither argument is persuasive. McClincy's cites no authority for its position that the payer must write something to indicate his intention on the check. The Carpenters continued to negotiate with McClincy's over the water damage repairs, not the work to the interior of the house. Together, the check and e-mail were sufficient to establish an accord and satisfaction, and the later negotiations were unrelated to this issue.

## Contract Damages

McClincy's argues that the trial court erred by awarding the Carpenters damages for the amount they spent to finish repairing the water damage without

---

[17] RP (July 16, 2014) at 174-75.
[18] RP (July 17, 2014) at 41.

subtracting the amount they would have paid to McClincy's to finish those repairs. The Carpenters argue that the damage award was proper because, but for McClincy's breach, their insurance company would have covered the cost of the work and they would not have had to pay McClincy's anything. We agree with the Carpenters.

In a breach of contract dispute, the trial court should put the injured party "into as good a pecuniary position as he would have [been in] if the contract had been performed" and allow the injured party to recover "all damages that accrue naturally from the breach." Eastlake Const. Co., Inc. v. Hess, 102 Wn.2d 30, 39, 686 P.2d 465 (1984). Those damages are measured by:

> "(a) the loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that [the injured party] has avoided by not having to perform."

Eastlake, 102 Wn.2d 46 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 347, at 112 (1981)).

Here, the trial court found that McClincy's had materially breached its contract with the Carpenters in two ways. First, it made fraudulent representations to Encompass. The court held that "McClincy's false statements to the insurance company caused the check not to be reissued and damaged the Carpenters."[19] Second, McClincy's repudiated and abandoned the contract. The court held that the Carpenters reasonably mitigated their damages for this second breach by retaining a construction consultant and hiring a different company to "complete the

---

[19] CP at 2376 (conclusion of law 1.15).

work under the McClincy's Contract."[20]  It awarded the Carpenters the amounts they had paid to the consultant and the second construction company as damages for McClincy's breaches.

McClincy's argues that the trial court erred in its damages calculation.[21]  It contends that the court should have subtracted the balance owed to McClincy's under the contract as a cost the Carpenters avoided.  But the Carpenters did not avoid this cost by hiring another company to complete the work; the only reason they would have owed McClincy's the balance on the contract was that Encompass "stopped all payments on the Carpenters' water loss claim."[22]  Under their contract, the Carpenters expected Encompass to pay for repairs related to the water damage, with the Carpenters being responsible in the event that Encompass failed to pay.  As the trial court concluded, Encompass would have paid the rest of the contract price if not for McClincy's breach.

---

[20] CP at 2376 (CL 1.21).

[21] McClincy's does not directly challenge the trial court's conclusions that its actions constituted breaches of the contract.  McClincy's brief assumes "for the sake of argument that at least one of [the breaches] is supported by evidence and would be a breach of the agreement" before objecting to the measure of damages.  Br. of Appellant at 21.  In its introduction, assignments of error, and facts section, McClincy's contends that the trial court's findings on these issues are unsupported, but it never argues that there was no breach.

For example, McClincy's states, "Among the factual questions, none matter more than Judge Linde's finding that, 'Encompass stopped payment and never reissued its check because Tim McClincy secretly convinced Encompass that it should not reissue its check.'"  Reply Br. of Appellants at 1 (quoting findings of fact (FF) 1.39).  McClincy's goes into this factual dispute at great length but never connects this factual question to any of its arguments.

McClincy's made the same arguments about this finding of fact at oral argument, calling it the "most pivotal finding" the trial court made.  Wash. Court of Appeals oral argument, supra, at 2 min., 25 sec. to 4 min., 57 sec.  But, rather than connecting the dispute over this finding to any of its arguments, McClincy's simply "moves on to the substance of the appeal."  Wash. Court of Appeals oral argument, supra, at 5 min, 7 sec. to 5 min, 11 sec.

[22] CP at 2255 (FF 1.40).

15

The trial court did not err by refusing to subtract the balance of the contract price from the Carpenters' damage award. The trial court put the Carpenters in the same position they would have been in had the contract been performed because, absent McClincy's breach, the Carpenters would not have personally paid anything to have the water damage repaired. We affirm the trial court's award of damages for breach of contract.

McClincy's argues that the trial court's Conclusion of Law 1.4 supports its position that that the trial court ignored the requirement to reduce the Carpenters' damage award by costs avoided. The court held that "[t]he Carpenters are not liable [to McClincy's] for the difference in the amount due under the McClincy's Contract and the amount paid because McClincy's materially breached the McClincy's Contract."[23] This is a description of the Carpenters' liability, not McClincy's liability, or the measure of the damages due to the Carpenters for McClincy's breach. This conclusion likely relates to McClincy's original claim that the Carpenters breached the contract. It is not relevant to the court's calculation of damages.

## Conversion

### Preliminary Injunction

McClincy's argues that the trial court erred by finding that it converted the Carpenters' furnishings because the trial court's preliminary injunction ordered McClincy's to retain the furnishings. The preliminary injunction has no bearing on the Carpenters' conversion claim.

---

[23] CP at 2376 (CL 1.14).

The purpose of a preliminary injunction is "to preserve the status quo until the trial court can conduct a full hearing on the merits" of a claim. Northwest Gas Ass'n v. Wash. Utils. & Transp. Comm'n, 141 Wn. App. 98, 115-16, 168 P.3d 443 (2007). The court does not adjudicate the parties' ultimate rights when deciding whether to issue a preliminary injunction. Rabon v. City of Seattle, 135 Wn.2d 278, 285, 957 P.2d 621 (1998).

Here, the trial court "enjoined and restrained [McClincy's] from transferring, assigning, selling, removing, encumbering, changing title to, concealing or in any way disposing of the Carpenter's [sic] household furnishings."[24] McClincy's argues that, because it obeyed this order, it cannot be liable for converting the property while the order was in place. This argument is not persuasive.[25] McClincy's had already unlawfully taken the property.[26] The court's order preserved the status quo. McClincy's cannot shift the responsibility for its unlawful acts to the trial court.

*Conversion Damages*

McClincy's argues that, even if this court upholds the finding that it converted the Carpenters' furnishings, it should reverse the damage award. McClincy's argues that the court improperly allowed hypothetical damages for loss of use, and that substantial evidence does not support the trial court's basis for calculating those damages. We disagree.

---

[24] CP at 130.

[25] Furthermore, McClincy's did not obey the preliminary injunction and did in fact conceal the property and move it. Therefore, even if McClincy's argument was legally sound, it would fail on the facts.

[26] McClincy's removed the Carpenters' property from Crown Moving and Storage Company in September 2012. The court entered the preliminary injunction in February 2013.

"A defendant is liable for conversion if he willfully and without legal justification deprives another of ownership of his property." Demelash v. Ross Stores, Inc., 105 Wn. App. 508, 522, 20 P.3d 447 (2001). Damages for conversion include the fair market value of the property at the time it was converted and "loss of use damages for the period of time during which the owner was wrongfully deprived of the converted property." Potter v. Wash. State Patrol, 165 Wn.2d 67, 85-86, 196 P.3d 691 (2008).

"[D]amages need not be proven with mathematical certainty, but must be supported by competent evidence in the record." Shinn v. Thrust IV, Inc., 56 Wn. App. 827, 840, 786 P.2d 285 (1990). The evidence must provide "a reasonable basis for estimating the loss" and cannot be based on "mere speculation or conjecture." Shinn, 56 Wn. App. at 840. We review a trial court's damage award for an abuse of discretion. See Shinn, 56 Wn. App. at 840. The court "must enter findings showing the basis and method of its computation of damages." Shinn, 56 Wn. App. at 840.

Here, the court found that McClincy's had converted the Carpenters' household furnishings, depriving them of the use of the furnishings from January 4, 2013, when the Carpenters first demanded that McClincy's return the furnishings, to December 18, 2013, when McClincy's finally returned the furnishings. The court relied on the cost to rent furniture, incurred by the Carpenters while they lived in an apartment, to calculate the damages for the loss of the use of their own furniture:

> 1.77. During the time the Carpenters were living out of their Medina home, they were housed in a 1,250 square foot apartment.

They rented furniture for that apartment at a cost ranging from $1,392.32 to $1,424.94 per month. The furniture was low quality which is much different than the quality of their own high end possessions. The Carpenters['] expenses for the apartment and furniture rental were covered by their insurance company for part of the time they were out of their home. However, the costs were not covered from September 2012 through December 2013, when this Court ordered McClincy's to return the furniture to the Carpenters.

1.78. The Carpenters['] Medina home is 5,000 square feet, and four times the size of the rental apartment. The furniture stored by Crown represented at least 50% if not 75% of all the furniture in the Carpenter's [sic] Medina home. Using a simple calculation of the monthly rental rate of the furniture multiplied by two to account for [the] furniture in half of the square footage of the Carpenter's [sic] home equates to $2,849.88. This amount multiplied by eleven and one half months starting on January 4, 2013, the date when the Carpenters first demanded the furniture and ending on December 18, 2013, when the furniture was returned, totals $32,864.70.[27]

McClincy's assigned error to finding of fact 1.78. It argues that there is no evidence that 50 percent to 75 percent of the furniture was put into storage. We disagree. Substantial evidence supports this finding. First, there was the unchallenged finding that "Brooks recommended the majority of the Carpenter's [sic] household furnishings be removed from their home in order to allow McClincy's to complete the project."[28] There was also evidence that the water had damaged half the square footage of the house. Finally, the trial court relied on a complete list of the furnishings removed.

McClincy's also argues that the trial court should not have awarded loss of use damages for the time before July 2013, when the Carpenters returned to their Medina house. McClincy's argues that, because the Carpenters were living in a rented apartment during that time, they had no use for the furniture, and so

---

[27] CP at 2258-59 (FF 1.77, 1.78).
[28] CP at 2251 (FF 1.9).

19

experienced no loss of use. Therefore, McClincy's argues, any damages for loss of use from January through July 2013 were hypothetical, which courts will not allow.

But the case McClincy's relies on for the argument that a plaintiff's inability to use property means that the plaintiff's lost use of that property is merely hypothetical is distinguishable. See DePhelps v. Safeco Ins. Co. of Am., 116 Wn. App. 441, 451-52, 65 P.3d 1234 (2003). There, the loss of use damages relied on a contract that required "'records supporting the fair rental loss.'" DePhelps, 116 Wn. App. at 452. In DePhelps, the court cited another case, in which the court reversed the damages for loss of use of a car because the plaintiff had not shown how much it would have cost to rent the car or the daily value of the car. Norris v. Hadfield, 124 Wash. 198, 203, 213 P. 934, 216 P. 846 (1923). The court held that loss of use damages were not available because "there was no proof of the value of such use per day, or per week, or what it would have cost to rent another car for the same uses during the same time." Norris, 124 Wash. at 203. The court did not state that the plaintiff had to show that he *actually used* another car for that time.

Conversely, here, the court established a monthly rate for renting furniture in an unchallenged finding of fact. The court noted that its estimate was "conservative," and it is clear from the findings that it did not award additional damages for the damage to the furniture itself. While this was not an exact measurement, it was not an unreasonable exercise of the court's discretion. We affirm the conversion judgment and damages.

## Consumer Protection Act

McClincy's argues the trial court erred by concluding that it violated the CPA. We conclude that McClincy's violated the CPA with its deceptive acts related to the Carpenters' furnishings.

The CPA forbids unfair competition and unfair or deceptive acts. "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The Supreme Court has identified five elements for a private cause of action for violation of the CPA:

> (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Some statutory violations satisfy the public interest impact element per se. Hangman Ridge, 105 Wn.2d at 791.

Here, McClincy's appears to be challenging whether the trial court's findings satisfy the first element: unfair or deceptive acts or practices.[29] The trial court concluded that many of McClincy's actions, including the way it handled the Carpenters' furnishings, constituted deceptive or unfair business practices:

> 1.33. Tim McClincy and McClincy's dishonest representations to Encompass and Crown, *conversion and trespass to the Carpenters' furnishings for the purpose of securing improper leverage for payment before issuing the notice of default under the McClincy's contract*, disingenuous negotiations with the Carpenters after converting their furnishings, presenting the Carpenters with

---

[29] McClincy's framed the issue for this assignment of error as "[w]hether compliance with a Preliminary Injunction is a defense to a claim for violation of the Consumer Protection Act." Br. of Appellant at 6. McClincy's does not mention the preliminary injunction in this section of its brief.

additional contract supplements filled with line items that had already been paid for, trespassing upon the Carpenters' property after terminating the McClincy's contract, suing the Carpenters, using its trade names interchangeably and *refusing to comply with this Court's orders constitute deceptive acts or practices.*[30]

The Carpenters specifically pleaded that McClincy's removal of their furnishings was an unfair or deceptive act or practice. McClincy's did not challenge the trial court's findings of fact that it had secretly removed the Carpenters' property, refused to return it them, and violated the court's preliminary injunction by removing the property again. These findings support the trial court's conclusion that McClincy's use of the Carpenters' furnishings was an unfair or deceptive practice or act and establish that McClincy's violated the CPA.

Accordingly, we do not address McClincy's arguments that the Carpenters did not allege that some of its other acts were unfair or deceptive and that the trial court considered some of McClincy's behavior to be per se violations of the CPA.

In its reply brief, McClincy's argues that the Carpenters' CPA claim should fail because the trial court's findings are a "litany of accusations" that do not support all the elements of a CPA claim and the Carpenters never articulated "a single coherent [CPA] claim."[31] McClincy's opening brief does not mention any of the other elements of a CPA violation. We decline to consider this argument because McClincy's raised it for the first time in its reply brief. Cowiche, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## Prejudgment Interest

McClincy's argues that the trial court erred by awarding the Carpenters

---

[30] CP at 2377-78 (CL 1.33) (emphasis added).
[31] Reply Br. of Appellant at 18.

prejudgment interest for their contract and conversion damages. The Carpenters argue that prejudgment interest was proper because the damages were liquidated. The contract damages were liquidated but the conversion damages were not.

Prejudgment interest is available for liquidated damages. Scoccolo Constr., Inc. ex rel. Curb One, Inc. v. City of Renton, 158 Wn.2d 506, 519, 145 P.3d 371 (2006). "[A] 'liquidated' claim [is] one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968). Claims "which have for their basis allegations that money has actually been received or dealt with under such circumstances that a definite sum is due to the plaintiff" are liquidated "whether resting upon contract, tort, or quasi contract." Prier, 74 Wn.2d at 33. This court reviews the award of prejudgment interest for an abuse of discretion. Scoccolo Constr., 158 Wn.2d at 519.

Here, the trial court awarded damages for breach of contract based on definite sums of money the Carpenters paid to their construction consultant and the other construction company to finish the repair work. Calculating these damages did not require the trial court to exercise discretion. The damages are liquidated and an award of prejudgment interest on them is proper.

The court also awarded damages for McClincy's conversion of the Carpenters' furnishings. The court provided an estimate of the actual damages suffered by the Carpenters as a result of the loss of use of their furnishings. As explained above, the trial court properly exercised its discretion when calculating

the damages for McClincy's conversion. But the court did not calculate the damages with the level of exactness required to support an award of prejudgment interest. We uphold the award of prejudgment interest for the contract damages but conclude that the trial court abused its discretion by awarding prejudgment interest for the conversion damages.

### Summary Judgment–Breach of Contract against Brooks

McClincy's argues that the trial court erred by granting Brooks' motion for partial summary judgment on McClincy's breach of contract claim. Specifically, it argues that the non-solicitation and non-circumvention provisions of the contract at issue were enforceable without additional consideration because Brooks was an at-will employee. We conclude that consideration was required because the non-circumvention provision was part of a noncompete agreement. Summary judgment was appropriate.

As noted above, summary judgment is proper where there are no material questions of fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review summary judgment decisions de novo. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 832, 100 P.3d 791 (2004).

To be valid, contracts require consideration. Labriola, 152 Wn.2d at 833. This applies to modifications of existing contracts. Labriola, 152 Wn.2d at 834. When an employer hires an employee on an at-will basis, his continued employment is generally sufficient consideration to support modifying the terms of his employment. See Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 77-78, 199 P.3d 991 (2008). But "[i]ndependent consideration is required

at the time promises are made for a noncompete agreement when employment has already commenced." Labriola, 152 Wn.2d at 838.

Noncompete agreements attempt to "protect the business or good will of the employer" by restraining the employee's liberty to compete with his employer or former employer when "'the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers.'" Racine v. Bender, 141 Wash. 606, 611-12, 252 P. 115 (1927) (quoting 9 A.L.R. 1467, 1468).

Here, McClincy's asserted claims against Brooks for breaching the terms of an "Employee Confidentiality, Non-Solicitation, and Non-Circumvention Agreement" signed in April 2008.[32] The purpose of the agreement was to "protect and preserve the confidential and/or proprietary nature of certain information, materials, and relationships of [McClincy's] that may be disclosed or made available to [Brooks] in connection with his employment."[33] It contained several restrictions on Brooks' behavior during the course of his employment and for one year after it ended, including that Brooks could not disclose any of McClincy's proprietary information to third parties, solicit any of McClincy's contractors or customers, or compete with McClincy's. Brooks moved for partial summary judgment on this claim, supplying evidence that he began work in February 2008, and arguing that the contract was invalid because McClincy's did not provide him

---

[32] CP at 515.
[33] CP at 1746.

25

with additional consideration for this agreement.

McClincy's argues that this agreement is not a noncompete agreement. It contends that it was seeking to enforce "Brooks' agreement not to 'solicit, divert, [or] damage' [McClincy's] existing customer relationships while he was employed."[34] It argues that only some provisions should be characterized as agreements not to compete and the court may sever those from the others. This is not persuasive. The purpose of the entire agreement is to protect McClincy's business by restraining Brooks. That includes the provisions McClincy's alleges Brooks violated. This agreement is a noncompete agreement.

Accordingly, in order for the noncompete agreement to be valid, McClincy's needed to provide additional consideration to support it. McClincy's does not dispute that there was no consideration for this agreement. Therefore, the trial court did not err by granting Brooks' motion for partial summary judgment.[35]

McClincy's argues that, even if the April 2008 agreement is unenforceable, summary judgment was improper because a February 2008 agreement signed by Brooks at the start of his employment also contained confidentiality agreements. McClincy's amended complaint alleged that Brooks breached the April 2008 agreement; it does not mention the February 2008 agreement.[36] Brooks' motion

---

[34] Br. of Appellant at 34 (first alteration in original) (quoting McClincy's amended complaint).

[35] Brooks argues that the agreement is also unenforceable because it was with "McClincy's Home Decorating, Inc.," which Brooks claims lacks the capacity to make contracts. We do not consider this alternative basis for affirming the trial court's summary judgment award, because Brooks did not raise it until his rebuttal memorandum. CP at 520; see Admasu, 185 Wn. App. at 40.

[36] McClincy's produced this employment agreement for the first time in response to Brooks' motion for partial summary judgment.

for partial summary judgment showed that the specific agreement McClincy's claimed Brooks breached was not enforceable. The possibility that Brooks breached an earlier agreement does not preclude summary judgment on the issue of whether Brooks breached the April 2008 agreement.

## Overtime Pay Calculations

McClincy's argues that the trial court's calculation of overtime pay has two flaws. First, the trial court should have used a fluctuating workweek, which would have resulted in a substantially smaller award. Second, the trial court averaged Brooks' hours per week, rather than calculating them exactly. We affirm the trial court's overtime calculations in all respects.

Washington's Minimum Wage Act (MWA), chapter 49.46 RCW, requires employers to compensate their employees for any hours they work in excess of 40 hours a week at a rate of 1.5 times their regular rate of pay. RCW 49.46.130(1). An employee may be "paid for a 'fluctuating workweek' when the employee is paid a fixed salary and 'it is clearly understood and agreed upon by both employer and employee that the hours will fluctuate from week to week and that the fixed salary constitutes straight-time pay for all hours of work.'" Fiore v. PPG Indus., Inc., 169 Wn. App. 325, 344, 279 P.3d 972 (2012) (quoting Wash. Dep't of Labor & Indus., Administrative Policy, ES.A.8.1(6), at 5 (issued Nov. 6, 2006)).

If the employee agrees to a fixed salary with a fluctuating workweek, the regular rate of pay is the fixed weekly salary, divided by the number of hours worked. Innis v. Tandy Corp., 141 Wn.2d 517, 529 n.42, 530, 7 P.3d 807 (2000). For each hour of overtime the employee works, the employer must pay him an

additional .5 times the regular rate of pay. Innis, 141 Wn.2d at 529 n.42, 530. The overtime pay must be in addition to the fixed salary for the week. Innis, 141 Wn.3d at 529 n.42, 530.

Here, the trial court concluded that McClincy's had not established Brooks' required hours. It found that "Brooks worked 9.4 hours per week over 40 hours, less one half hour for lunch, equaling 8.9 hours of overtime due for 52 weeks for 3.5 years, at the rate of $51.92 per hour, totaling $84,100.02."[37]

McClincy's argues that Brooks' employment agreement establishes that he agreed to a fluctuating workweek. The agreement provides, "Sales Representatives must work a minimum of 40 hours per week and a maximum of 70 hours per week in order to obtain their sales quotas."[38] This is not sufficient evidence to prove that Brooks and McClincy's had a clear understanding that Brooks agreed to a fluctuating workweek at a fixed salary. It does not specify a weekly salary or mention overtime. The trial court did not err by calculating overtime using a 40-hour workweek.

The only case McClincy's relies on, Innis, is distinguishable. 141 Wn.2d at 530-31. There, the court held that the employer had established the employees' agreement to a fluctuating workweek as a matter of law because their compensation plan had a chart explaining the salary formula, with overtime, for a 54-hour workweek. Innis, 141 Wn.2d at 531.

McClincy's also argues that "Brooks has to prove his actual overtime hours,

---

[37] CP at 2276 (CL 4).
[38] Def.'s Ex. 208 at 2.

28

not some theoretical average."[39] McClincy's cites no authority for this position. Brooks does not respond to this argument. As noted above, the law does not require a party to prove damages with mathematical certainty. Shinn, 56 Wn. App. at 840. McClincy's points out that Brooks took at least one vacation during the 3.5 years at issue. Given that the trial court used an average number of overtime hours per week to arrive at its damage award, a one- or two-week vacation over the course of 3.5 years is not enough of a deviation to make the court's damage award unreasonable. The trial court did not abuse its discretion. We affirm the damage award for McClincy's overtime violation.

Attorney Fees at Trial

McClincy's argues that the trial court abused its discretion by awarding attorney fees based on the Carpenters' and Brooks' inadequately detailed documents. We conclude that the parties' submissions, together with the expert opinions, were sufficiently detailed to support the award of attorney fees.

We review a trial court's attorney fee award for an abuse of discretion. Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013). A trial court abuses its discretion if its decision is based on untenable grounds or for untenable reasons. Berryman, 177 Wn. App. at 657. Courts must take an active role in assessing the reasonableness of a party's request for attorney fees. Berryman, 177 Wn. App. at 657. The trial court must support its award of attorney fees with findings of fact and conclusions of law. Berryman, 177 Wn. App. at 657-58. "The findings must show how the court resolved disputed issues of fact and the

---

[39] Br. of Appellant at 37.

conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658.

In Berryman, the trial court's findings of fact did not address the opposing party's "detailed arguments for reducing the hours billed to account for duplication of effort and time spent unproductively." 177 Wn. App. at 657. The Court of Appeals reversed the trial court's fee award because the findings were too conclusory. Berryman, 177 Wn. App. at 658-59.

Here, McClincy's objects on the ground that the parties' block billing did not segregate how much time was spent on each task within the block. McClincy's does not point to any entries that it contends are unreasonable. Rather, it contends that it was unable to analyze the specific entries because the billing statements are "impenetrable stacks of documents."[40]

Brooks' attorney submitted his billing statements, which listed how much time he spent on the case each day and identified what tasks he had completed, including attending and preparing for certain depositions and writing and responding to specific motions.[41] He deducted time spent on issues or claims for which attorney fees were not available from his request. The Carpenters also filed their billing statements to support their motion. Their entries were in the form of block billing but were fairly specific.[42] Some of the longer entries indicated how

---

[40] Br. of Appellant at 42.

[41] For example, Brooks' attorney's entry for March 13, 2014, indicated that he spent a total of 8 hours attending the depositions of Kent Willing and Danny Reeves, reviewing a document from McClincy's counsel, and preparing for McClincy's deposition.

[42] For example, on March 10, 2014, one of the Carpenters' attorneys spent 2.9 hours, on "[p]reparation of CR 30(b)(6) notice and subpoena for deposition of NationStar Mortgage LLC; continue preparation for deposition of R. Brooks; call from N. Corning; call from T. Graham, review email from E. Zubel vacating deposition of R. Brooks." CP at 2488.

much time was spent per task.[43]

The trial court granted both the Carpenters' and Brooks' requests for attorney fees. The court noted that both parties had supported their requests with declarations from experts, who affirmed that the rates and hours were reasonable given the nature of the case. The court found that the experts' opinions were credible. The court also explained that the "time, skill, and labor involved to litigate this matter was higher than usual due to opposing counsel's litigation tactics and the unsubstantiated claims brought by [McClincy's] in this matter."[44]

Regarding the Carpenters' request, the court found that McClincy's presented "general criticism of block billing" but failed to point to specific entries as problematic.[45] The court found that the block billing did not impact its "ability to analyze and evaluate the reasonableness of the fees claimed, nor did any block billing entries prevent the Court from assessing the reasonableness of the fees requested."[46] It also concluded that there was no basis for segregating the fees and costs for compensable and non-compensable fees because the Carpenters' "defenses and counterclaims [were] inextricably intertwined and interrelated."[47]

For Brooks' request, the court found that "[t]he billing records submitted in support of the request for attorney's fees and costs are sufficiently detailed, and the hourly rate charged by Brooks' counsel is reasonable compared to similar rates

---

[43] For example, on July 9, 2014, another one of the Carpenters' attorney's entries stated, "Prepare for client meeting regarding trial (.7); meet with clients regarding expected course of trial, testimony of proposed witnesses (2.2); confer with Jen regarding examination of key witnesses, confer with N. Corning regarding same (4.6)." CP at 2450.
[44] CP at 2530 (CL 2.5); CP at 2656 (CL 2.5).
[45] CP at 2529 (FF 1.24).
[46] CP at 2529 (FF 1.24).
[47] CP at 2531 (CL 2.7).

charged by attorneys in King County."[48] It concluded that there was a basis to segregate Brooks' compensable and non-compensable fees, and that Brooks deducted 29 hours from his fees because they were incurred advancing claims on which he did not prevail.

Given the generic nature of McClincy's objections, we conclude that the trial court's findings of fact and conclusions of law are specific enough to support its awards of attorney fees and affirm.

## Attorney Fees on Appeal

All three parties sought attorney fees on appeal. We award reasonable attorney fees to the Carpenters because they prevailed on their contract claim and CPA claim, both of which allow for the recovery of attorney fees. RCW 19.86.090. We award Brooks attorney fees because he prevailed on his wage violation claim and breach of contract claim, both of which allow for the recovery of attorney fees. RCW 49.48.030.

## CONCLUSION

We reverse the trial court's award of prejudgment interest for the Carpenters' conversion damages, but affirm in all other respects.

Trickey, ACJ

WE CONCUR:

[48] CP at 2656.

32