# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

KEBEDE ADMASU, et al.,        )      No. 70220-3-I

              )

       Appellants,         )

              )

         v.                  )

              )

PORT OF SEATTLE, a Washington    )      UNPUBLISHED OPINION

municipal corporation,         )

              )      FILED: October 27, 2014

       Respondent.        )

_____ )

VERELLEN, A.C.J. — A group of property owners seek compensation for the

diminished value of their properties due to the Port of Seattle's operation of the third

runway at the Seattle-Tacoma International Airport (Sea-Tac Airport).[1] The property

owners appeal from the trial court's order denying class certification and two orders

granting summary judgment in favor of the Port. The trial court did not abuse its

discretion in denying class certification because the plaintiffs failed to demonstrate

that common issues would predominate over individual issues and that a class action

was a superior method of adjudication of the controversy. The trial court also

properly granted summary judgment in favor of the Port for claims brought by

plaintiffs whose properties are burdened by an avigation easement[2] and for claims for

_____

[1] This case involves the claims of over 200 parties. Including each name in the caption would take several pages. In the interest of brevity, we order abbreviation of the caption to that set forth above for purposes of this opinion and any post-opinion pleadings in this court.

[2] An easement allowing aircraft flights over the servient estate.

damages caused by noise brought by plaintiffs who acquired their properties after a noise exposure map was submitted under federal law. But the trial court erred by granting summary judgment on claims for damages caused by toxic discharge, fumes, and vibrations (whether or not related to low frequency noise) because the Port's motion for summary judgment did not clearly extend to those claims. Accordingly, we affirm in part and reverse in part.

FACTS

In November 2008, the Port began operations on its third runway. In June 2009, three property owners (Class Plaintiffs) filed an inverse condemnation action[3] against the Port, alleging that they and thousands of other property owners in the proximity of the Sea-Tac Airport have suffered diminished property values as a result of airport operations on the Port's third runway.

In 2010, the Class Plaintiffs moved for class certification. Following a hearing in January 2011, the trial court denied the motion without prejudice. In April 2011, the Class Plaintiffs again moved for class certification. Following a two-day hearing, the trial court denied class certification in April 2012.

After the trial court denied class certification, the plaintiffs filed a third amended complaint asserting the consolidated claims of 291 individual plaintiffs. In addition to asserting inverse condemnation, the complaint included trespass and nuisance claims.

---

[3] "A party alleging inverse condemnation must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." Phillips v. King County, 136 Wn.2d 946, 957, 968 P.2d 871 (1998).

The Port brought its first motion for summary judgment against 126 plaintiffs (Easement Plaintiffs) who each owned property burdened by an avigation easement granted to the Port. Property owners participating in the Port's noise remedy program under RCW 53.54.030 conveyed such easements primarily in exchange for soundproofing.[4] The Port argued that the easements precluded all of the claims asserted by the Easement Plaintiffs. The trial court granted summary judgment in favor of the Port.

The Port brought its second motion for summary judgment against 111 plaintiffs (NEM Plaintiffs) who purchased their property after the Port published notice of its Federal Aviation Administration-approved noise exposure maps pursuant to the federal Aviation Safety Noise Abatement Act of 1979, 49 U.S.C. 47506. The relevant noise exposure maps were submitted in 1993 and in 2001. The Port argued that federal law precluded damages claims based on noise unless particular noise levels are reached. In April 2014, the trial court granted the motion in favor of the Port, dismissing all of the NEM Plaintiffs' claims.

Subsequently, the trial court granted the 25 remaining plaintiffs' motion for voluntary dismissal and entered a final judgment.

The property owners appeal, challenging the order denying class certification, the order granting summary judgment in favor of the Port on the Easement Plaintiffs' claims, and the order granting summary judgment in favor of the Port on the NEM Plaintiffs' claims.

---

[4] Some property owners also received transaction assistance, while others, in places where soundproofing would not be effective, received monetary compensation.

DECISION

*Class Plaintiffs*

The Class Plaintiffs contend that the trial court abused its discretion in denying class certification.[5] We disagree.

We review a trial court's class certification decision for manifest abuse of discretion.[6] As our Supreme Court has noted, "The standard of review is paramount in this case: it is not our place to substitute our judgment for that of the trial court. When this court reviews a trial court's decision to deny class certification, that decision is afforded a substantial amount of deference."[7] We will uphold the trial court's decision if the record shows that the court considered the CR 23 criteria and that the court's decision is based on tenable grounds and is not manifestly unreasonable.[8]

CR 23(a) enumerates four prerequisites that a plaintiff seeking class certification must satisfy: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of the representatives. In addition, as CR 23(b) is applied here, the plaintiff has to satisfy both predominance and superiority requirements.[9]

---

[5] The proposed class action was to be divided into Class A and Class B. On appeal, the Class Plaintiffs challenge only the trial court's decision on Class A.

[6] Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wn.2d 40, 47, 905 P.2d 338 (1995).

[7] Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 266, 259 P.3d 129 (2011).

[8] Lacey, 128 Wn.2d at 47. The trial court "must articulate on the record each of the CR 23 factors for its decision on the certification issue." Schwendeman v. USAA Cas. Ins. Co., 116 Wn. App. 9, 19, 65 P.3d 1 (2003).

[9] CR 23(b)(3). In making the predominance and superiority findings, the trial court should consider, among other things, "the interest of members of the class in individually controlling the prosecution or defense of separate actions," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum,"

The trial court here found that the Class Plaintiffs failed to satisfy the predominance requirement "that the questions of law or fact common to the members of the class predominate over any questions affecting only the individual members."[10] The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[11] This "requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether 'adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves.'"[12] "[T]he relevant inquiry is whether the issue shared by the class members is the dominant, central, or overriding issue shared by the class."[13]

Here, the trial court found that individual issues would predominate over common issues "because the evidence required to establish liability is necessarily property-specific."[14] Under Washington law, the effects of airplane noise and related impacts do not constitute a taking of an individual's property unless the property

---

and "the difficulties likely to be encountered in the management of a class action." CR 23(b)(3).

[10] CR 23(b)(3).

[11] Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

[12] Sitton v. State Farm Mut. Auto. Ins. Co., 116 Wn. App. 245, 254, 63 P.3d 198 (2003) (quoting 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 4.25, at 4-86 (3d ed. 1992)).

[13] Miller v. Farmer Bros. Co., 115 Wn. App. 815, 825, 64 P.3d 49 (2003); see also Smith v. Behr Process Corp., 113 Wn. App. 306, 323, 54 P.3d 665 (2002) ("In deciding whether common issues predominate over individual ones, the court is engaged in a pragmatic inquiry into whether there is a common nucleus of operative facts to each class member's claim." (citation and internal quotation marks omitted)).

[14] Clerk's Papers at 2066.

owner can prove a measurable diminution in the property's market value.[15] Consequently, each affected property owner must establish that his or her property has suffered a diminution in value because of the government action in order to demonstrate liability. Moreover, a similar showing is required to establish the appropriate amount of damages. Therefore, although the Port's general actions may be common to all, liability can likely be established only after examination of the circumstances surrounding each of the affected properties.

The Class Plaintiffs contend that common issues nevertheless predominate because they can demonstrate a class-wide, aggregate diminution of property values resulting from airport operations on the third runway, which can then be apportioned to the individual properties. But the Class Plaintiffs' proposed approach for accomplishing this objective involved only abstract concepts that give little confidence that common issues would actually predominate over individual issues. The Class Plaintiffs' valuation experts, Dr. Wayne Hunsberger and Dr. Ronald Throupe, did not provide a concrete method for determining diminished value attributable to the third runway airport operations.[16] Instead, they primarily discussed general information describing a variety of accepted techniques for analyzing properties affected by

---

[15] See Highline School Dist. No. 401, King County v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); Martin v. Port of Seattle, 64 Wn.2d 309, 318-20, 391 P.2d 540 (1964).

[16] The Class Plaintiffs also retained Dr. Sanford Fidell, a noise expert, who conducted a community noise impact study to measure community reaction to the airport. Dr. Fidell's work does not purport to determine property value diminution, and the valuation experts had not decided how Dr. Fidell's study would be incorporated into their own research.

disamenities such as airports.[17] Both experts clearly explain that they have not considered in any detail the particular techniques they will utilize, the manner or combination in which any technique will be utilized, the specific disamenities they intend to measure, or the information they will need to conduct their studies. Beyond the very general discussions of possible techniques and vague references to their ability to account for a vast multitude of likely impacts on property value apart from the third runway, the experts offer little assurance that the plaintiffs would be able to prove a useful *class-wide* diminution of property values based on specific airport operations attributable only to the third runway. For example, the experts provided only a superficial explanation of how they would account for airport operations attributable to the preexisting runways. Furthermore, the experts did not provide specific information about how they would establish causation between any property value diminution and the airport operations in general, and they did not explain how they would establish causation for particular conditions associated with airport operations.

Generalized evidence of diminished value and generalized proof that the diminished value resulted from airport operations would not establish liability for inverse condemnation. Instead, as the trial court determined, individual, property-specific information would be required. The Class Plaintiffs proposed methodology for demonstrating class-wide diminution in value is not sufficiently concrete to

---

[17] These techniques include basic descriptive statistics, multivariate statistics, paired sales analysis, case study analysis, and formal and informal survey research.

persuade us or the trial court that common issues would predominate over individual issues.[18] The trial court did not abuse its discretion in this regard.

The trial court here also found that the Class Plaintiffs failed to satisfy the superiority requirement, which requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[19] It is "a highly discretionary determination that involves consideration of all the pros and cons of a class action as opposed to individual lawsuits."[20] "[W]here individual claims of class members are small, a class action will usually be deemed superior to other forms of adjudication."[21] But "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"[22]

It was not unreasonable for the trial court to determine that many individual issues will be involved in determining both whether a taking of a specific property occurred and the measure of damages for individual property owners.[23] The trial court determined that certifying the claims as a class action would not promote the efficient resolution of the class members' claims given the many individual inquiries

---

[18] "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

[19] CR 23(b)(3).

[20] Miller, 115 Wn. App. at 828.

[21] Id.

[22] Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001).

[23] "[M]any courts that find common predominance lacking, also hold that the prevalence of individual issues renders the case unmanageable for superiority purposes." WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:74 (5th ed. 2014).

that would be required to determine both liability and damages. This determination is supported by the record, especially because the valuation experts' imprecisely defined study required consideration of individualized information for purposes of reaching any conclusions regarding diminution in value or causation.[24] Moreover, the trial court's decision is supported by persuasive authority concluding that a class action often is not a superior method of litigating inverse condemnation cases involving aircraft noise.[25] The trial court did not abuse its discretion in determining that a class action where the plaintiffs would likely allocate individual damages based on a class-wide diminution in value is not superior to individual actions where the plaintiffs would prove property-specific diminution in value.[26]

Because the Class Plaintiffs failed to satisfy the predominance and superiority prerequisites required by CR 23(b), the trial court did not abuse its discretion in denying class certification.[27]

---

[24] For example, Dr. Throupe indicated that they might utilize an appraisal method, and that "it could be hundreds. It could be thousands" of appraisals that would be conducted. Clerk's Papers at 1691.

[25] See, e.g., Bieneman v. City of Chicago, 864 F.2d 463, 465 (7th Cir. 1988); Ario v. Metro. Airports Comm'n., 367 N.W.2d 509, 515-16 (Minn. 1985); City of San Jose v. Superior Court, 12 Cal.3d 447, 525 P.2d 701, 710-11, 807-08 (1974); Alevizos v. Metro. Airports Comm., 298 Minn. 471, 216 N.W.2d 651, 668 (1974).

[26] Notably, there have been a number of inverse condemnation actions precipitated by the development and prior expansions of the Sea-Tac Airport, but none of these cases proceeded as class actions. See Highline School Dist., 87 Wn.2d 6; Anderson v. Port of Seattle, 66 Wn.2d 457, 403 P.2d 368 (1965); Martin, 64 Wn.2d 309; Cheskov v. Port of Seattle, 55 Wn.2d 416, 348 P.2d 673 (1960); Ackerman v. Port of Seattle, 55 Wn.2d 400, 348 P.2d 664 (1960), abrogated by Highline School Dist., 87 Wn.2d 6; Anderson v. Port of Seattle, 49 Wn.2d 528, 304 P.2d 705 (1956).

[27] We need not evaluate the trial court's finding that the class representatives were inadequate because a failure of proof on any one of the prerequisites is fatal to certification. See Garcia v. Johanns, 444 F.3d 625, 631 (D.C. Cir. 2006); Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003); Retired Chicago

## *Avigation Easement Plaintiffs*

The Easement Plaintiffs contend that the trial court erred by granting summary judgment in favor of the Port on the claims brought by plaintiffs whose properties are burdened by an avigation easement. We disagree.

"Property is often analogized to a bundle of sticks representing the right to use, possess, exclude, alienate, etc."[28] Easements give holders "rights that were contained within the right of possession and carved out of it by the owner of the possessory estate: sticks taken out of the bundle."[29] As such, "[e]asements are property rights or interests that give their holder limited rights to use but not possess the owner's land."[30] To the owner of the burdened estate, easements "are subtractions from his full spectrum of rights, burdens on his title."[31] Generally, avigation easements permit the easement holder to engage in "unimpeded aircraft flights over the servient estate[s]."[32] Such easements deprive the landowners of their rights to the stated property interest.

---

Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993); Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982); see also Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178, 188, 35 P.3d 351 (2001) (holding that because CR 23 is identical to its federal counterpart, FED. R. CIV. P. 23, federal cases interpreting the analogous federal provision are highly persuasive).

[28] Kiely v. Graves, 173 Wn.2d 926, 936, 271 P.3d 226 (2012).

[29] 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.1, at 80 (2d ed. 2004).

[30] State v. Newcomb, 160 Wn. App. 184, 191, 246 P.3d 1286 (2011); see City of Olympia v. Palzer, 107 Wn.2d 225, 229, 728 P.2d 135 (1986) ("'An easement is a right, distinct from ownership, to use in some way the land of another, without compensation.'" (quoting Kutschinski v. Thompson, 101 N.J.Eq. 649, 656, 138 A. 569 (1927)).

[31] 17 STOEBUCK & WEAVER, supra note 29, at 80.

[32] BLACK'S LAW DICTIONARY 622 (10th ed. 2014).

Both versions of the avigation easements burdening the properties in this case provide similar property interests for our purposes.[33] The landowners bargained away an easement authorizing "the use and passage of all types of aircraft" and agreed to be burdened by those conditions "which may be alleged to be incident to or to result from" those airport operations.[34] Upon that conveyance, the granted property interest can no longer be subject to a taking. The Port takes nothing from them by using the easement granted for airport operations.[35]

Notably, the Easement Plaintiffs do not argue on appeal that the Port exceeded the scope of the easement. Nor do they raise on appeal any of the

---

[33] The Easement Plaintiffs each own land burdened by one of two versions of avigation easement, one issued prior to 1993 and one issued after 1993 when the legislature amended RCW 53.54.030. The pre-1993 easements provide, in relevant part, that the grantor conveys and warrants to the Port, appurtenant to and for the benefit of the airport and "any additions thereto," a permanent easement "for the free and unobstructed use and passage of all types of aircraft . . . through the airspace over or in the vicinity of [the grantor's real property], with such use and passage to be unlimited as to frequency, type of aircraft, and proximity." Clerk's Papers at 2196 (1989 easement). The easement expressly states that "noise, vibrations, fumes, deposits of dust or other particulate matter . . ., fear, interference with sleep and communication, and any and all other things which may be alleged to be incident to or to result from" airport operations "shall constitute permanent burdens" on the grantor's real property. Id. The grantor also waived "all damages and claims for damages caused or alleged to be caused by or incidental to" airport operations. Id. The scope of the post-1993 easements is substantially similar to the pre-1993 easements, except that the burden of noise associated conditions arising from airport operations is limited to a certain average yearly noise exposure. See Clerk's Papers at 2191 (1996 easement).

[34] Clerk's Papers at 2191, 2196.

[35] Accord Orion Corp. v. State, 109 Wn.2d 621, 641, 747 P.2d 1062 (1987) ("[A] property right must exist before it can be taken." (citation and internal quotation marks omitted)); Granite Beach Holdings, LLC v. State ex rel. Dep't of Nat. Res., 103 Wn. App. 186, 207, 11 P.3d 847 (2000) ("The appellants' inverse condemnation claim was properly dismissed because the property right the appellants claim was injured [to cross adjoining state lands] does not exist.").

11

contract formation defenses such as unconscionability, misrepresentation, and duress that might render the easements invalid.

Instead, the Easement Plaintiffs assert that the easements cannot frustrate their claims because, at the time that they granted the easements, they did not knowingly or voluntarily waive their federal and state constitutional rights to just compensation for the diminished value of their property or their right to a jury trial to determine just compensation.[36] The concerns they express, that they had no choice but to provide the easements because the noise was so stressful and that they did not know the easements prevented them from suing the Port for a taking, are encompassed within the contract defenses that they declined to raise on appeal. But they seek to elevate these issues to a constitutional dimension by their waiver argument.[37]

The Easement Plaintiffs cite no compelling authority applying constitutional waiver requirements to any analogous situation, where a property owner conveys property to a governmental entity. Their reliance on criminal cases and cases

---

[36] See U.S. CONST. amend. V; WASH. CONST. art. I, § 16 (amend. 9). A landowner is entitled to have a jury determine the amount of compensation. Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 657, 935 P.2d 555 (1997) (quoting WASH. CONST. art. I, § 16 (amend. 9)); see also RCW 8.12.090. The Easement Plaintiffs attempt to disconnect the right to compensation and a jury determination into separate and distinct rights, but they are one and the same because the right to a jury determination stems from the right to compensation when a taking occurs. See WASH. CONST. art. I, § 16 (amend. 9) ("No private property shall be taken or damaged for public or private use without just compensation having been first made, . . . which compensation shall be ascertained by a jury, unless a jury be waived.").

[37] Of the 126 Easement Plaintiffs, 79 purchased their property subject to previously-recorded easements. Those plaintiffs cannot assert waiver arguments. See Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.").

involving First Amendment or parental rights is unavailing. Moreover, the Easement Plaintiffs were engaged in commercial transactions when, in exchange for compensation, they conveyed the avigation easements to the Port. It goes almost without saying that, in order to waive a right, the right must exist.[38] Having clearly granted permission for the Port to conduct airport operations, there is no remaining claim for inverse condemnation based on that same activity. In other words, having conveyed part of the bundle of sticks to the Port, the property owners are necessarily and voluntarily precluded any claim for inverse condemnation based upon the Port's authorized use of those sticks.[39]

Accordingly, the trial court properly granted summary judgment in favor of the Port on those claims brought by the Easement Plaintiffs.

### Noise Exposure Map Plaintiffs

The NEM Plaintiffs contend that the trial court erred by granting the motion for summary judgment on all of their claims. We agree.

Federal law, through the Aviation Safety Noise Abatement Act of 1979 (ASNAA), imposes a general limitation on recovery of damages caused by noise once a person has actual or constructive notice that noise exposure maps have been

---

[38] See Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954) ("The right, advantage, or benefit must exist at the time of the alleged waiver."); Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 899, 28 P.3d 823 (2001) ("Washington courts recognize that a contracting party cannot waive a statutory right before the right exists."). "The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled." Bowman, 44 Wn.2d at 669.

[39] To the extent that the Easement Plaintiffs argue that they did not knowingly and voluntarily waive their rights to *past* damages for takings that occurred prior to the time they granted the easements, the express language of the easement waiving all claims for damages caused by airport operations precludes such a claim. See Keyes v. Bollinger, 31 Wn. App. 286, 293, 640 P.2d 1077 (1982) ("[W]aiver may be established by proof of an express agreement.").

13

submitted to the Secretary of Transportation.[40] The NEM Plaintiffs do not dispute on appeal that 49 U.S.C. § 47506 precludes their recovery of damages due to noise. And the Port does not dispute that the ASNAA does not preclude the recovery of damages caused by conditions other than noise. Instead, the parties dispute whether the motion for summary judgment adequately addressed claims for damages caused by other conditions described in the complaint, namely increased vibrations, toxic discharge, and fumes.[41]

"It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment."[42] Further, "[a]llowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond."[43] Thus, "it is incumbent upon the moving party to determine what issues are susceptible to resolution by summary judgment, and to clearly state in its opening papers those issues upon which summary judgment is sought."[44] If the moving party fails to do so, it may either strike and refile its motion for summary judgment or raise the new issues

---

[40] See 49 U.S.C. § 47506. Under the statute, damages for noise attributable to an airport are recoverable only if damages result from a significant change in the airport layout, the flight patterns, or the type or frequency of aircraft operations, or if there was an increase in nighttime operations.

[41] Among other things, the plaintiffs alleged that "[t]he increase in air traffic passing over the Plaintiffs' properties in close proximity to the properties has created heightened noise pollution, increased vibration, and increased toxic discharge and fumes." Clerk's Papers at 2076.

[42] White v. Kent Med. Ctr., Inc., PS, 61 Wn. App. 163, 168, 810 P.2d 4 (1991).

[43] Id.

[44] Id. at 169; see Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 637-38, 246 P.3d 822 (2011).

in a new filing at a later date, but the moving party cannot prevail on the original motion based on issues not raised therein.[45]

Here, the Port's motion for summary judgment requested that the trial court dismiss all of the NEM Plaintiffs' claims. However, the motion discussed only ASNAA's federal preemption over claims for damage caused by noise conditions. The Port's motion did not address the plaintiffs' claims for damages caused by fumes or toxic discharge. In fact, the motion did not even make a passing mention of fumes or toxic discharge. And the plaintiffs' responsive memorandum discusses these conditions only to emphasize that those claims were not a subject of the present summary judgment motion. Contrary to the Port's assertions, a general request to dismiss all claims, standing alone, is inadequate to raise those claims and issues not discussed more fully within the motion for summary judgment.

Similarly, the Port argues that it adequately raised the issue whether ASNAA precludes the NEM Plaintiffs' claims for vibration damages by briefly stating that the "causes of action . . . each depend on [an] alleged increase in operations and the alleged 'heightened noise pollution' and vibrations (*i.e.*, low frequency noise) caused by those operations."[46] But this passing reference does not "clearly state" that this is an issue "upon which summary judgment is sought."[47] The Port's motion did not put the NEM Plaintiffs on notice that they needed to address whether the ASNAA applies

---

[45] See White, 61 Wn. App. at 169.

[46] Clerk's Papers at 3849.

[47] White, 61 Wn. App. at 169.

to damages from vibrations,[48] and they had no opportunity to make an adequate response.

Accordingly, summary judgment on those claims for damages caused by increased vibrations, toxic discharge, and fumes was premature because they were not adequately raised in the Port's motion for summary judgment.

We affirm in part and reverse in part.[49] Specifically, we affirm the trial court's order denying class certification and its order granting summary judgment based on the avigation easements. We affirm the trial court's order granting summary judgment in favor of the Port on the NEM Plaintiffs' claims for damages caused by noise, but we reverse the order to the extent that it dismisses the NEM Plaintiffs' claims for damages caused by increased vibrations (whether or not related to low frequency noise), toxic discharge, and fumes.

WE CONCUR:

_____

_____  Cox, J.

_____  Becker, J.

---

[48] We take no position here on the issue whether, or the extent to which, the ASNAA limits recovery of damages for vibrations attributable to the airport.

[49] We deny appellants' motion to strike portions of the amicus brief. "[A] motion to strike is typically not necessary to point out evidence and issues a litigant believes this court should not consider." Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012). Rather, "the brief is the appropriate vehicle for pointing out allegedly extraneous materials—not a separate motion to strike." Id. To the extent the briefing discusses evidence outside the record, we have not considered it. RAP 9.12.