# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARMELO ZAPPALA and CHERYL ZAPPALA, husband and wife,<br><br>Appellants,<br><br>v.<br><br>THE PORT OF SEATTLE, a Washington municipal corporation,<br><br>Respondent. | No. 79271-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: February 18, 2020 |

APPELWICK, C.J. — The Zappalas appeal an order of summary judgment rejecting their inverse condemnation claim against the Port for excessive airplane noise. They contend the avigation easement they granted to the Port is not enforceable by reason of procedural unconscionability. We affirm.

## FACTS

Carmelo and Cheryl Zappala have owned a property in the North Approach Transition Zone of the Port of Seattle (Port) Airport since 1981. They leased the property for 10 years before buying it. The Zappalas have a residence and a dog kennel on the property.

In July 2000, the Zappalas applied to participate in the noise remedy program for the Seattle Tacoma International Airport (Airport). The noise remedy program allows the Port to provide soundproofing improvements to qualifying

properties in exchange for the property owner granting an avigation easement over the property. RCW 53.54.030(3).

On April 24, 2001, the Zappalas signed an avigation easement giving the Airport an unlimited right to fly aircraft over their property. The easement granted the right to the airport "including any additions thereto, wherever located, hereafter made by the Port or its successors." The Zappalas signed the document before a notary public, acknowledging that their signature was voluntary.

The avigation easement provided that noise exposure to the property would not increase more than 1.5 decibel day/night level (DNL) above the base level established for the property. DNL is the energy summation of all individual noise events in a 24 hour period. It is the primary measure of noise impacts on people and land utilized by the Federal Aviation Administration (FAA) and other federal agencies. The base level for the Zappalas property was 70 DNL, computed from the FAA accepted noise contour map of the area. Thus, although the overflight right conveyed to the Port was "unlimited," the easement allowed recovery for damages if the noise level exceeded 71.5 DNL. Such recovery would be limited to damages caused by noise levels above 70 DNL.

The Port ultimately paid $59,810 dollars for noise reduction improvements to the Zappalas' home.[1] Mr. Zappala admits that these improvements worked temporarily to reduce the noise levels in his home. However, in 2008, the airport

---

[1] This final cost includes a change order authorized by Mr. Zappala that raised the cost $4,787 from the Port approved cost in the homeowner participation agreement final approval. Mr. Zappala testified that the total cost was roughly equal to the assessed value of the Zappalas' home in 2001 when they entered the program.

2

opened a third runway. The Zappalas claim that this addition dramatically increased the noise level in their home. They further claim that the Port made no mention of plans to construct the runway at any time before the Zappalas conveyed the avigation easement.

On September 13, 2017, nearly 10 years after the third runway opened and 16 years after the original contract, the Zappalas brought this suit for inverse condemnation against the Port. The complaint alleges, among other things, that the noise and vibrations from overflights have substantially impaired the value of their property. The complaint does not mention the avigation easement or allege that the noise levels exceeded 71.5 DNL.

The Port then brought a motion for partial summary judgment. It sought a ruling that the avigation easement was in full effect, that the Zappalas must prove that the noise levels exceeded 71.5 DNL, and that any potential recovery should be limited to damages caused by noise above 70 DNL.

The Zappalas opposed the motion, claiming that the easement was unenforceable due to procedural unconscionability. The Port argued that those claims were untimely and without merit. The trial court granted the Port's motion. The Port then moved to dismiss the case. The Zappalas did not oppose the motion.

The Zappalas now appeal the trial court's grant of partial summary judgment.

DISCUSSION

The Zappalas make two arguments. First, they claim that the avigation easement does not bar their claim. Second, they claim that the avigation easement is unenforceable due to procedural unconscionability.

Summary judgment is appropriate when no genuine issues exists as to any material fact and the moving party is entitled to judgment as a matter of law. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We review summary judgment rulings de novo. Id.

I. Effect of the Avigation Easement on the Zappalas' Claims

The Zappalas claim that the avigation easement does not bar their inverse condemnation claim. In Admasu v. Port of Seattle, 185 Wn. App. 23, 38-39, 340 P.3d 873 (2014), this court held that the avigation easements granted in the Port's noise remedy program bar inverse condemnation claims. The Zappalas do not contend that their avigation easement is different than those in Admasu. Rather, they claim that Admasu is flawed.

The Admasu court held that property owners burdened by an avigation easement to the Port cannot later claim a government taking of their property based on aircraft noise, because they have conveyed an overflight right to the Port. Id. The Port therefore takes nothing from them because the right has been voluntarily conveyed by the property owner. Id. at 37.

The Zappalas claim Admasu is flawed because it conflates freedom of overflight with freedom from damages. They point to Martin v. Port of Seattle, 64 Wn.2d 309, 391 P.2d 540 (1964). In that case, property owners sought damages

4

from the Port based on noise caused by low-flying aircraft. Id. at 311-12. The Port argued, inter alia, that it was not liable because its overflights were permitted by federal law, were not wrongful, and could not subject the Port to liability. Id. at 315. Our Supreme Court disagreed, finding that the property owners could still seek relief under the takings clause for damages to their land inflicted for the public good. Id. The Zappalas contend that because freedom of overflight granted to the Port by federal law does not equate to freedom from damages, freedom of overflight granted by homeowners in an avigation easement should also not equate to freedom from damages.

The Zappalas' argument is without merit. Admasu simply says that a property owner cannot claim a taking based on an activity they have given the Port the right to do. Martin grants property owners a right to seek damages based on noise from overflights even if those flights are authorized by law. Id. at 315. Admasu recognizes that homeowners have the ability to bargain that right away. The Zappalas did so here.

At oral argument, the Zappalas took issue with the Admasu court's characterization of the Port's noise remedy program as a commercial transaction. The avigation easement acknowledges the Port as the "proprietor of the Seattle-Tacoma International Airport." The Port has the same rights and power to contract as an individual or private corporation would when acting in its proprietary capacity. See Hite v. Pub. Util. Dist. No. 2, 112 Wn.2d 456, 460, 772 P.2d 481 (1989). The transactions in the Port's noise remedy program do not involve the sale of household goods, as the Zappalas claim. As consideration for a property right, the

5

Port paid a contractor to make significant structural improvements to the Zapalas' home. The Zappalas are not challenging the work done pursuant to the home improvement contracts which would typically be consumer transactions. They are challenging their sale of an easement for commercial overflight. Avigation easements are not typical consumer transactions. The trial court and the Admasu court are correct in characterizing this as a commercial transaction.

The trial court did not err in finding that the avigation easement bars recovery unless noise exceeds 71.5 DNL.

## II. Procedural Unconscionability

The Zappalas argue that the easement is unenforceable by reason of procedural unconscionability. The Port counters that the Zappalas claims are time barred and without merit.

The Port argues that the Zappalas' procedural unconscionability claim is barred by Washington's six year statute of limitations on written contracts. RCW 4.16.040(1). The Zappalas counter that the statute of limitations does not apply, because their unconscionability claim is being used as an affirmative defense, with its remedy limited to non-enforcement of the contract. The Zappalas do not cite controlling authority that unconscionability may be used as an affirmative defense to escape the statute of limitations. Likewise, the Port does not cite controlling authority that an unconscionability defense is barred by the statute of limitations.

The Port cites Potter v. America's Servicing Co., No. C13-1129RAJ, 2014 WL 3694247, at *3 (W.D. Wash. July, 23, 2014). In that case, a woman sought relief from a loan eight years after she had obtained it because she claimed the

6

loan was substantively unconscionable.  Id. at *1-2.  The court found that her unconscionability claim was barred by RCW 4.16.040(1), and that it accrued the moment she entered the loan.  Id. at *3.  It found that the she could not "plausibly argue that she discovered the allegedly unconscionable terms of the loan when she signed the agreement in 2006, and she did not sue WMC until February 2014."  Id.

The Zappalas rely on a series of out-of-state cases that stand for the idea that unconscionability claims may be used as a "shield" but not a "sword"—the latter being cases where a party seeks affirmative relief such as damages or rescission, and the former being a contract formation defense.  They admit that Washington has not addressed the issue.  Nevertheless, they characterize their unconscionability claim as a defense and therefore not subject to the statute of limitations.  They illustrate the difference by quoting State ex rel. American Freehold Land Mortgage Co. of London v. Tanner, 45 Wash. 348, 357, 88 P.32 (1907), which addressed the concept in the context of fraud:

> "It is also true that, where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake; but a different case is presented when the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief.  The three-year statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud.  It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of the fraud."  The above case seems to be squarely in point.  It is actions themselves which are barred by

7

statutes of limitation, and not matters of pure defense to such actions.

Id. (quoting Hart v. Church, 126 Cal. 479, 58 Pac. 913, 77 Am. St. Rep. 195 (1899)).

The Zappalas' argument that they are using the theory "defensively" belies the facts. They granted the easement allowing the Port to use their property. The Port is not here seeking to enforce the contract against the Zappalas. It did that by utilizing the easement, which it has done openly and consistently for almost 20 years. The Zappalas, like the plaintiff in Potter, were aware of the contract and its alleged unconscionability from the outset, and yet still complied with its terms for nearly 20 years before bringing this suit. They are now seeking damages from the Port based on the Port's use of a right the Zappalas explicitly conveyed to it. It is the Zappalas, not the Port, who are in an offensive posture here. The Zappalas' procedural unconscionability claim is time barred.

We affirm.

WE CONCUR: