`

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ESTATE OF JONNY TORRES AND HIS PARENTS JAMIE VALENCIA AND MARIA M. TORRES, | ) ) ) ) | No. 36886-6-III (Consolidated with No. 37777-6-III) |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| KENNEWICK SCHOOL DISTRICT, | ) ) | |
| Respondent. | ) | |

SIDDOWAY, A.C.J. — The trial court dismissed this Public Records Act[1] (PRA)

action, finding that the Estate of Jonny Torres's claim that the Kennewick School District

violated the PRA by failing to explain its inability to produce security video failed as a

matter of law. The Estate appealed. It soon learned through discovery in a separate

federal action that the District might have violated the PRA in other ways. It sought to

offer evidence of those other alleged violations on appeal, relying on RAP 9.11.

_____

[1] Chapter 42.56 RCW.

Our commissioner granted the Estate's motion and ruled that the superior court should consider the additional evidence and determine whether it would change the outcome of the District's summary judgment motion. The superior court ruled that because the additional evidence was never relied on by the Estate in defending against the summary judgment motion, it would not change the result. The Estate filed an appeal of that decision, which was consolidated with its earlier appeal.

The superior court properly granted summary judgment dismissing the initial security video-related PRA claim. It misapprehended the nature of the issue it was directed by our commissioner to address following the granting of the RAP 9.11 motion, however. It erred in refusing to consider whether the Estate's PRA claims based on records newly-produced in federal discovery presented a genuine issue of material fact requiring trial.

We affirm the trial court's May 2019 summary judgment dismissal of the Estate's security video-related claim. We reverse its August 2020 ruling that summary judgment dismissal of the Estate's complaint remained appropriate. We return the matter to the superior court with directions for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

*Events of 2017*

On September 14, 2017, Kennewick School District's assistant superintendent of secondary education, Ron Williamson, learned that Jonny Torres, a sixth grade student at

Highlands Middle School, had been hospitalized for serious complications of his asthma, and Jonny's parents had expressed a belief that the complications were the result of Jonny's having exercised in physical education (PE) class a week earlier. Upon learning of Jonny's hospitalization, Mr. Williamson traveled to the middle school where he spoke to Dan Davila, the school's security officer. Mr. Williamson instructed Mr. Davila to save all video recorded by the school on September 7 that included Jonny, beginning with Jonny's PE class.

Mr. Davila used Jonny's class schedule and information from the school nurse to track Jonny's movements, reviewed security video from the school, and saved every segment of recorded video beginning with Jonny's fifth period PE class in which Jonny appeared. Fifth period began at 12:03 p.m. The first recorded video Mr. Davila saved began at approximately 12:20 p.m. and depicts students who had emerged from locker rooms and taken seats on the gym floor. The recorded video collected by Mr. Davila was saved to a flash drive and provided to Mr. Williamson the next day. It was also uploaded to a shared drive on the District's network.

Tragically, although Jonny's father called an ambulance upon Jonny's completion of school on September 7 and Jonny was airlifted to Sacred Heart Medical Center's Children's Hospital in Spokane, his condition was so critical that he was placed on life support. He was declared brain dead and removed from life support on September 26.

On November 3, lawyers retained to represent Jonny's estate wrote to the District and the middle school and demanded the preservation of "all evidence involving this tragic case" including video tape recordings, school files, and incident reports. Clerk's Papers (CP) at 11. By that time, however, any security video recorded at the middle school that had not been preserved by Mr. Davila was no longer available. The District's security cameras transmit video to the District's network video recorder when the cameras detect motion. If no motion is detected, no video is recorded. Because the video consumes a great deal of storage space, the District allocates enough space to store video for 30 days. After that, the video is automatically deleted to make room for new video.

On December 18, a lawyer retained by the District wrote to the Estate's lawyers acknowledging their request for preservation of evidence related to the September 7 incident. He asked that further communications about the incident be referred to him. He concluded by stating, "If you make a public record request in the future, please kindly direct the same to my attention." CP at 14.

The Estate directed a public records request to the District, with a copy to its outside counsel, on December 29. Among other requests, it sought "each document, video, CD, writing, e-mails involving Kennewick School District (including their employees or agents) related to student, Jonny Torres," followed by examples of items it deemed to be included. CP at 17.

4

*Events of 2018*

On January 6, 2018, Bronson Brown, the District's general counsel, wrote to the Estate's lawyers to acknowledge their public records request and notify them that the District would be able to respond to the request in 60 calendar days. He stated, "[T]he amount of records you requested likely is quite substantial and will take a substantial amount of time to assemble." CP at 148. On March 8, Mr. Brown produced e-mails responsive to the Estate's public records request, with the exception of e-mails believed to be exempt from disclosure.

On May 31, the Estate sent a follow-up letter to the District, with a copy to its outside counsel, again requesting video footage of Jonny at school on September 7, including but not limited to footage of Jonny's arrival and his presence in classrooms, hallways, the main office, the gym, and outdoors. On June 8, Mr. Brown sent an e-mail to the Estate's lawyers that provided a link to all of the video of Jonny then in the District's possession.

On June 14, one of the Estate's lawyers e-mailed Mr. Brown to say that on reviewing the video, it was apparent that "hours of video of Jonny Torres on September 7, 2017, have not been provided." CP at 29. He asked for an explanation of whether video had been lost, destroyed or was not being produced for some reason. On June 15, Mr. Brown responded,

> I will verify with staff that the videos that were produced are all that exist regarding J. Torres. If there are more that are responsive to your records request below then I anticipate those should be able to be produced to you by 6/29.

> I will be out of the office all next week but if you have any other questions/concerns I will be able to get back to you when I return on Tuesday, 6/26.

CP at 29. The Estate's lawyers received no further video production from Mr. Brown.

The Estate filed a complaint for violations of the PRA on November 6. The complaint alleged that the Estate submitted a public records request for all records maintained by the District. Most of the facts alleged in the complaint addressed only the District's alleged failure to provide all the security video the Estate believed was in the District's possession.

*Events of 2019*

The District answered the Estate's PRA complaint on February 5, 2019. A few months later, both parties moved for summary judgment. The Estate's motion and memorandum in support of summary judgment limited its argument to the District's alleged failures to provide an adequate response to the request for all video of Jonny, accusing the District of "failing to identify the missing footage or provide a written explanation for the missing footage prior to the involvement of the court." CP at 47. The District argued in moving for summary judgment that the Estate had no evidence that the District had failed to provide all security video in its possession at the time of the public

records request. The Estate's opposition to the District's motion for summary judgment did not allege or imply that records other than security video were raised by its complaint.

Following a hearing, the trial court granted the District's motion and denied the Estate's motion on May 24. The Estate appealed.

Meanwhile, on March 13, Jonny's parents filed a wrongful death action in the federal district court for the Eastern District of Washington. Among documents produced by the District in September in response to discovery were pages from Jonny's PowerSchool[2] profile and related documents that had not been produced in response to the December 2017 public records request.

The Estate filed its opening brief in this appeal on October 30. Its opening brief addressed the fact that records newly-produced in federal discovery were responsive to its public records request but had not been produced in response to the request. When the District moved in November to strike all references to the newly-produced documents, the Estate filed a counter motion in December asking this court to accept the newly-produced documents as additional evidence under RAP 9.11.

---

[2] "Schools within Kennewick School District use a program called PowerSchool as its student information system. PowerSchool is used to record student grades, attendance, discipline, demographic information, emergency contacts, athletic clearance, etc." CP at 203.

*Events of 2020*

The parties' motions were heard by our commissioner, who entered her ruling granting the Estate's motion on January 23, 2020. The commissioner found that the Estate's public records request was broad. More importantly, the commissioner found that "[a]lthough the Estate's complaint for violations of the Public Records Act focused on the videos, the alleged public records violations the Estate complained of were as broad-based as its requests were." CP at 388. The commissioner ruled that "the additional evidence is relevant to the question on review—*whether the District produced all relevant documents requested.*" *Id.* (emphasis added). The commissioner observed that requiring this court to decide whether summary judgment was appropriate given the only evidence before it—the evidence about production of security video—"risks a statute of limitations problem for the Estate if it has to file a separate complaint against the District based upon the additional evidence." CP at 389. The commissioner determined that the superior court was "the best venue for the Estate to present all of the alleged additional evidence. The superior court shall also rule on whether the District's failure to provide those additional documents to the Estate in response to the Estate's public records request defeats the District's motion for summary judgment." CP at 390. The ruling directed the superior court to proceed as set forth, after which the matter would return to the Court of Appeals for the determination of the Estate's appeal.

On May 21, the Estate filed a motion in superior court seeking an order vacating the summary judgment and to reopen discovery based on the new evidence. The District opposed the motion, characterizing the issue referred by our commissioner as being whether the Estate's complaint "allege[d] that [the District] improperly withheld not just video footage, but other documents which were voluntarily produced by [the District] after Plaintiffs' federal lawsuit was filed." CP at 317. At the hearing of the motion, the District argued that the Estate's complaint did not allege any violations based on the records first produced in the federal discovery.

On August 21, the superior court mailed its ruling to the parties' lawyers and to this court's clerk/administrator. Its ruling stated, "That *video* documents were the sole theory for the Estate's public records act case cannot be seriously disputed. Neither party moved this court for a *partial* summary judgment ruling regarding *video documents versus all other potential documents/records*. Rather, what was presented to me were cross motions for summary judgment requesting this court to either grant judgment in favor of the Estate or complete dismissal of the case." CP at 478. The superior court elaborated on further reasons for believing that the Estate's theory at the time of the summary judgment motion was limited to the District's response to the request for security video. It concluded by stating:

> My decision was based on the sole theory presented to me: whether or not [the District] had produced all video documents in existence on the date of the Estate's PRA request. As to that sole question presented to me,

9

> I ruled in favor of [the District]. I maintain that ruling and deny the
> Estate's CR 60 Motion to Vacate.

CP at 480 (emphasis omitted). It directed the District to prepare an order denying the

Estate's motion to vacate. It entered that order in September.

The Estate filed what it styled as an amended notice of appeal assigning error to

the superior court's orders. This court determined that the matter constituted a new

appeal and consolidated it with the earlier appeal.

## ANALYSIS

It is undisputed that the parties' cross motions for summary judgment decided by

the superior court in May 2019 dealt only with whether the District violated the PRA in

responding to the Estate's request for all security video. As explained in section II

below, the superior court erred by failing in 2020 to view the violations at issue more

broadly, based on our commissioner's direction. Nonetheless, its decision in 2019 can be

reviewed separately as a motion for partial summary judgment, and is affirmed. We

address it first.

I. SUMMARY JUDGMENT DISMISSAL OF THE SECURITY VIDEO-RELATED CLAIM WAS
PROPER

The Estate contends the superior court erred when it granted the District's motion

for summary judgment dismissing its security video-related PRA claim.

10

Nos. 36886-6-III and 37777-6-III) (consolidated)
*Estate of Torres v. Kennewick School District*


Standard of Review

The purpose of summary judgment is to "avoid a useless trial when there is no genuine issue of any material fact." *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). The moving party bears the burden of proving by uncontroverted facts that no genuine issue of fact exists. *See Regan v. Seattle*, 76 Wn.2d 501, 458 P.2d 12 (1969); *Hughes v. Chehalis Sch. Dist. No. 302*, 61 Wn.2d 222, 377 P.2d 642 (1963).

Once the moving party meets its initial burden of proof, the burden shifts to the nonmoving party to show a genuine issue of fact exists. *See id.* The adverse party may not rest on mere allegations in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *W. G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 438 P.2d 867 (1968); *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 956, 247 P.3d 18 (2011) (nonmoving party cannot rely on "speculation and conjecture" to raise a genuine issue of material fact). If no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. CR 56(c).

We review the grant or denial of a motion for summary judgment de novo. *Keck v. Collins*, 181 Wn. App. 67, 78, 325 P.3d 306 (2014). All facts and reasonable inferences from the facts are to be construed in the light most favorable to the nonmoving party. *Id.* at 79.

11

Nos. 36886-6-III and 37777-6-III) (consolidated)
*Estate of Torres v. Kennewick School District*

Public Records Act Claims

The PRA is a strongly worded mandate for broad disclosure of identifiable public records. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). In response to a proper public records request, RCW 42.56.070(1) requires a public agency "to 'make available for public inspection and copying all public records' or identify a specific exemption and provide an explanation of how it applies to the individual agency record." *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 809, 246 P.3d 768 (2011) (quoting RCW 42.56.070(1)). "When an agency withholds or redacts records, its response 'shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld.'" *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014) (quoting RCW 42.56.210(3)). "The purpose of the requirement is to inform the requester why the documents are being withheld and provide for meaningful judicial review of agency action." *Id.*

The PRA recognizes that records may be destroyed by an agency in the ordinary course of operations. *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 750, 261 P.3d 119 (2011) (Madsen, C.J., concurring). And Washington courts have drawn a distinction between a request for *information* about public records and a request for the public records themselves. *Smith v. Okanogan County*, 100 Wn. App. 7, 12, 994 P.2d 857 (2000). A request for information about a public record is not the same as a

12

request for an *identifiable* public record. *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998). "The [PRA] does not require agencies to research or explain public records, but only to make those records accessible to the public." *Smith*, 100 Wn. App. at 12.

Application to the Estate's Security Video-Related Claim

As it relates to security video of Jonny in the possession of the District, the Estate contends on appeal that summary judgment dismissal of its violation claim was improper because it demonstrated that the District's response to its records request was inadequate. It characterizes District general counsel Brown as equivocating when he wrote, "I will verify with staff that the videos that were produced are all that exist" and "If there are more that are responsive . . . I anticipate those should be able to be produced to you by 6/29." CP at 29. It argues that the District was required by the PRA to disclose and explain why additional responsive security video did not exist.

On the issue of equivocation, the Estate relies on *Yakima Herald-Republic*. In that case, a newspaper sought information on the amount of public funds being used for the defense of two men charged with aggravated first degree murder, who potentially faced the death penalty. 170 Wn.2d at 781. In its attempt to obtain the information, the newspaper submitted a public records request to the county and intervened in the criminal case to challenge the court's order sealing attorney billing records. *Id.* at 783-85. In responding to the public records request, the county stated it was unclear whether the

13

superior court's order sealing the attorney billing records included related billing records held outside the court, and expressed its concern with "the impact of the paper's request on vital governmental functions such as the ability of the defendants to have a fair trial, as well as attorney-client confidentiality." *Id.* at 806.

The Washington Supreme Court concluded that billing records held by nonjudicial entities were subject to disclosure. *Id.* at 805-08. It found the county's response to be insufficient under the agency's statutory burden "to 'make available for public inspection and copying all public records' or identify a specific exemption and provide an explanation of how it applies to the individual agency record." *Id.* at 805-06 (quoting RCW 42.56.070(1)) (citing RCW 42.56.210(3)); *Rental Ass'n v. City of Des Moines*, 165 Wn.2d 525, 199 P.3d 393 (2009)). RCW 42.56.210(3) provides that "[a]gency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) *and a brief explanation of how the exemption applies to the record withheld*." (Emphasis added.) The court awarded costs and reasonable attorney fees to the newspaper because the county's response failed to provide that brief explanation of an exemption's application. *Yakima Herald-Republic*, 170 Wn.2d at 809.

In this case, the District did not refuse to allow inspection of security video based on the alleged application of an exemption. The brief explanation requirement at issue in *Yakima Herald-Republic* does not apply. Other cases are in accord. *Koenig*, 182 Wn.2d

14

at 95 (costs and fees awarded where agency "either failed to cite a specific exemption or failed to provide any explanation for how a cited 'other' statute exemption applied to the redacted driver's license numbers in the specific records produced"); *John Doe L v. Pierce County*, 7 Wn. App. 2d 157, 198, 433 P.3d 838 (2018) (*Yakima Herald-Republic*'s rule that an agency cannot equivocate about the application of an exemption "assumes that the agency redacted or withheld records in response to a request.").

Equally inapposite is the Estate's reliance on *Neighborhood Alliance*. The language from *Neighborhood Alliance* on which the Estate relies was in the context of discussing why an agency's adequate search for responsive documents will satisfy its obligation under the PRA even if it is later discovered that some responsive documents were not found. As the court explained:

> [A]gencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered. The search should not be limited to one or more places if there are additional sources for the information requested. . . . This is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found.

172 Wn.2d at 720 (citations omitted).

In *Neighborhood Alliance*, Spokane County was suspected of unfair hiring practices. *Id.* at 709. This suspicion was supported by an undated office seating chart, anonymously provided to Neighborhood Alliance, which identified work locations for employees who had not yet been hired. *Id.* at 709-10. A public records request to the

15

county from Neighborhood Alliance requested complete electronic information logs for the chart, calculated to determine when the undated seating chart was created. *Id.* at 710. In response, the county produced only one, unhelpful, document. *Id.* at 711. It was later discovered that the computer from which the seating chart was printed was replaced in April 2005, a month before Neighborhood Alliance submitted its records request. *Id.* at 711-12. Only a new computer was searched for responsive records, with no effort made to determine whether the hard drive of the computer used to print the seating chart had been erased or the file had been backed up in any other place. *Id.*

On appeal, the county argued that since it did not have the requested records, it could not be held liable under the PRA. *Id.* at 719. The Washington Supreme Court held, however, that "the focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." *Id.* at 719-20. Because the county searched only the new computer and did not provide any explanation why it neglected to search the old computer or any other place likely to contain the record, it failed to show that its search was adequate. *Id.* at 722-23; s*ee also Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 522, 326 P.3d 688 (2014) (citing *Neigh. All.*, 172 Wn.2d at 722) ("When an agency denies a public records request on the grounds that no responsive records exist, its response should show at least some evidence that it sincerely attempted to be helpful.").

This appeal does not present an adequate search issue. The Estate did not challenge the District's evidence that any security video not preserved by Mr. Davila in mid-September would have been deleted in the ordinary course some two and a half months before the Estate's public records request.

The words "explanation" and "explain" appear in only five provisions of the PRA, none relevant here.[3] The language from *Neighborhood Alliance* on which the Estate relies must be understood as applying when the issue presented is the adequacy of an agency's search. Nothing suggests that our Supreme Court was imposing a new burden, not imposed by the PRA itself, to provide not only responsive documents, but information. As earlier observed, "[t]he [PRA] does not require agencies to research or explain public records, but only to make those records accessible to the public." *Smith*, 100 Wn. App. at 12.

---

[3] As earlier discussed, RCW 42.56.210(3) requires a brief explanation, when an agency refuses to permit inspection, of how a specific exemption applies to the record withheld. RCW 42.56.120(3)(b) provides that when a customized service charge is assessed to a requester, the agency must provide an explanation why the charge is assessed. RCW 42.56.070(1) provides that deletions of identifying details to prevent an unreasonable invasion of personal privacy interests must be fully explained. RCW 42.56.250(14)(e)(i) provides that law enforcement body-worn camera recordings that would otherwise be exempt from public inspection and copying can be obtained by attorneys involved in certain civil rights actions if the attorney explains the relevancy of the recording to the cause of action. Finally, RCW 42.56.570(1) charges the attorney general's office with publishing and updating a pamphlet explaining the PRA.

The District's evidence that it provided the Estate with all of the responsive security video in its possession at the time of the public records request is unchallenged.[4] When, as here, questions are asked about the failure to produce additional records, it will often be prudent to answer the questions since a failure to answer might result in unnecessary litigation. But the District's failure to answer the Estate's lawyer's questions was not a violation of the PRA. Summary judgment dismissing the Estate's claim that the District's response to the request for video violated the PRA was appropriate.

II.     BECAUSE THE SUPERIOR COURT MISAPPREHENDED OUR COMMISSIONER'S DIRECTION TO TAKE ADDITIONAL EVIDENCE, THE MATTER MUST BE RETURNED TO THAT COURT

Under RAP 9.11 we may direct that additional evidence on the merits be taken before we decide a case on review. It is, by the rule's express terms, a limited remedy. RAP 9.11(a). Professor Tegland describes it as "designed to address the situation in which some formal failure of proof, will, if not cured, necessitate a socially-wasteful new

---

[4] Or at least not effectively challenged. The Estate makes a passing argument that e-mail obtained by the Estate in the records newly-produced in federal discovery raises a question of fact about the adequacy of the District's search for security video. The e-mail was sent by the principal of Highlands Middle School on September 15, 2017, to Mr. Davila and addresses what "Ron Williamson has asked you to do" to preserve security video from September 7. CP at 255. The Estate construes the e-mail as inconsistent with declarations provided by Mr. Williamson and Mr. Davila. Assuming without agreeing that there is an inconsistency, there may or may not be a reasonable explanation. Critically, however, an e-mail sent more than three months before the District received the Estate's public record request does not raise any genuine issue of fact about the adequacy of the District's subsequent search for records. Nothing in the e-mail casts doubt on the District's evidence that it produced all of the security video preserved by District employees.

18

trial that could be burdensome in human terms, and be expensive as well." 2A KARL B.

TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.11 author's cmt. 1, at 696

(8th ed. 2014). As this case illustrates, it can also be used to address the situation where a

failure to present then-unknown evidence in opposition to a motion for summary

judgment might necessitate wasteful posttrial motion practice.

The six elements that must be demonstrated create a high bar to the seldom-

granted relief. This court may direct the taking of additional evidence only if

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a). The Estate persuaded our commissioner that all six requirements existed in

this case.

Our commissioner was also persuaded that the Estate's complaint was broad

enough to include claims for PRA violations unrelated to the District's response to the

request for video. The issue was debatable, but the District did not move to modify the

commissioner's ruling, so it is the final decision of this court under RAP 17.7. *See*

*Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 547, 815 P.2d 798 (1991) ("A party

aggrieved by a commissioner's ruling can only object by a motion to modify filed no

later than 10 days after the ruling is filed. [Former] RAP 17.7 [(1991)]. If no such motion is filed, the ruling becomes a final decision of the court.").

The issue that the commissioner's ruling directed to the superior court to decide was whether the records newly-produced in response to federal discovery did or did not present evidence of one or more PRA violations that require trial. To that end, the Estate should have identified what it contended were the newly-discovered PRA violations, the District could contest the claimed violations, and the superior court should then have decided whether summary judgment remained appropriate or whether the Estate's enlarged claims required trial.

The superior court arrived at its own interpretation of its charge: to decide whether the parties' May 2019 *summary judgment arguments* dealt only with the security video issues.[5] We agree with the superior court that the parties' arguments at that time *did* deal with only that issue. But following the commissioner's ruling, that does not justify dismissing the Estate's case in its entirety. If a defendant who moves for summary

---

[5] Several things could have contributed to the superior court's misunderstanding about what it was expected to do. A direction to a trial court to take additional evidence under RAP 9.11(b) is rare, and in retrospect, it would have helped if our commissioner had provided more explicit direction. The procedure first went awry when the Estate filed a CR 60(b) motion to vacate the May 2019 summary judgment order—a motion that was unnecessary and suggested that whether to entertain the additional evidence was the superior court's decision to make, when it was not. And the District incorrectly argued to the superior court that the issue presented for the court's decision was whether the Estate's complaint was broad enough to encompass any PRA violations revealed by the newly-produced records—but that issue had already been decided in the Estate's favor by our commissioner.

20

judgment only demonstrates a basis for dismissing some of a plaintiff's claims, then *his mere request* that the court dismiss all of the plaintiff's claims does not provide a basis for dismissing a case in its entirety. *Admasu v. Port of Seattle*, 185 Wn. App. 23, 40, 340 P.3d 873 (2014). "[T]he moving party cannot prevail on the original motion based on issues not raised therein." *Id.* Given our commissioner's controlling ruling that the Estate's security video claim was *not* its only claim of a PRA violation, the superior court was required to recognize that what the District presented in May 2019 as a motion for dismissal of the entire complaint must be seen, instead, as a motion for partial summary judgment. The direction to the superior court in 2020 was to determine whether summary judgment was appropriate in light of claims based on the records newly-produced in federal discovery.

The Estate is unduly optimistic about where the commissioner's ruling leaves it at this point in the proceedings. It contends we should grant *it* summary judgment on the issue of whether the District silently withheld the records newly-produced in federal discovery. But on return of this matter to the trial court, the Estate did not move again for summary judgment—and even if it had, it could not appeal a denial. It could only seek discretionary review. *See, e.g.*, *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 380, 901 P.2d 1079 (1995). Clearly this court will not decide a summary judgment motion in the first instance. The additional evidence needs to be presented to the superior court, at which time the District can raise such issues as the records'

responsiveness to the request, exemptions from inspection and disclosure, and the adequacy of its search.

The Estate requests an award of reasonable attorney fees on appeal under RAP 18.1 and the PRA. RAP 18.1(a) allows this court to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." "The PRA requires the trial court to award attorney fees and costs to a party who 'prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time.'" *Gronquist v. Dep't of Licensing*, 175 Wn. App. 729, 756, 309 P.3d 538 (2013) (quoting RCW 42.56.550(4)).

The Estate has not prevailed on its claim that the District violated the PRA in responding to its request for video. It has not yet prevailed on its claim that the District violated the PRA in any other respect.

We affirm the partial summary judgment dismissal of the Estate's claim that the District violated the PRA in responding to its request for video. Consistent with the commissioner's ruling, the Estate's motion to add evidence to the record is granted to the extent needed to allow the superior court to determine whether evidence of the records newly-produced in federal discovery defeat the District's motion for summary judgment. The parties are asked to notify this court if, on rehearing, the District's motion for summary judgment is denied. If so, these appeals will be dismissed.

If the superior court holds again that the District is entitled to summary judgment dismissal of all of the Estate's claims then, consistent with the commissioner's ruling, the matter will return to the Court of Appeals for a determination of the balance of the Estate's appeal.

The matter is remanded to the superior court for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.